¶ 1. Jerry and Norma Jean Cooley filed suit in the Chancery Court of Panola County alleging slander of title to their land because of a materialman's lien placed against the title of their land. The Cooleys sought actual, consequential and punitive damages. Joe Merrell filed a cross-complaint against Cooley seeking damages in the amount of $46,130 for the value of equipment and services rendered. The trial court, with the Honorable Dennis M. Baker presiding, entered judgment in favor of Merrell in the amount of $28,967.65. The Cooleys, feeling the judgment to be unjust, have perfected this appeal.
¶ 2. Cooley has articulated four issues. He complains that the trial court erroneously found that a contract existed between him and Merrell; that the court erroneously ignored the expert witness' testimony and that the parties stipulated to the amount of dirt delivered to the home site; that the court erroneously entered a judgment in the amount of $28,967.65 against Cooley; and that the court failed to award Cooley a monetary judgment for defamation of title. It is important to note for procedural history that the appellee did not file a timely brief. Finding that the record needs to be further developed and that the judge erroneously disregarded the stipulation by the parties, we reverse and remand.
 STANDARD OF REVIEW
¶ 3. In any case where a chancellor's ruling is to be reviewed, we follow the same path each time. "This Court will always review a chancellor's findings of fact, but the Court will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." Cummings v. Benderman, 681 So.2d 97, 100 (Miss. 1996) (citing Smith v. Dorsey, 599 So.2d 529, 533 (Miss. 1992).
 [A] finding of fact is clearly erroneous when: although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. Moreover, to the point of credibility, a trial judge has no authority arbitrarily to reject the record of a witness otherwise plausible on its face, particularly where that record is substantially corroborated.
Heidel v. State, 587 So.2d 835, 839 (Miss. 1991).
¶ 4. We must address the question of what to do when the opposing side does not properly and timely file a brief. When, "it is not apparent to us from the record, in the light of the appellant's brief, that the judgment is in fact correct," we have several options regarding what course of action to pursue. W.T. Raleigh Co. v. Armstrong,165 Miss. 380,140 So. 527 (Miss. 1932). Raleigh further states that appellate courts have the discretion, on default of the appellee, to either (1) reverse based on both a complicated or voluminous record and a well-written brief, thoroughly stating the facts and correct *Page 842 
citations and applications of the law, "so that the brief makes out an apparent case of error." Id. at 527. This Court is not required to scour the record in order to find a plausible argument for the appellee, "but will accept appellant's brief as confessed and will reverse." Id. Or the court may (2) affirm if the record easily avails itself to examination, and upon examination we readily detect a convincing and valid basis or ground upon which we may safely affirm, thus disregarding the default of appellee. Id. at 528.
¶ 5. However, the case will be reversed and remanded when this Court is presented with only one side of the argument to review, an insufficient record and a judgment that has no clear support from the record.
 [T]aking into view the argument presented by the appellant, the basis or grounds of the judgment, and the facts in support of it are not apparent, or are not such that the court could with entire confidence and safety proceed to affirm, the judgment will be reversed without prejudice.
Id.
 FACTS
¶ 6. Jerry and Norma Jean Cooley entered into an oral contract with Tom Taylor for site preparation of their residential lot. He was to clear the lot of underbrush and trees. This initial job was paid in full and completed without incident. After clearing the lot, Cooley realized that a ditch found in the middle of the lot would need to be filled and contracted with Taylor to do so. Cooley met with Taylor and Gene Riley, an independent truck driver, to discuss the further site preparation. They all agreed that Cooley would make arrangements for dirt to be hauled from land in Batesville by Riley at the rate of forty-five dollars per hour per truck. Taylor was to be responsible for spreading the dirt at the home site at the rate of one dollar per yard. There was no written instrument illustrating this agreement.
¶ 7. Tom Taylor was doing business as TT Construction. He contacted Joe Merrell who was doing business as Merrell Construction. Taylor contracted with Merrell for the use of heavy equipment, namely a bulldozer and a trackhoe, on the Cooley home site. Merrell Construction was the sub-contractor for Taylor and billed him directly. On two separate occasions Cooley paid money to Taylor. This money was then disbursed to TT Construction for $3,320 and Merrell Construction for $18,000.
¶ 8. After these two payments had been made by Cooley, Taylor received an invoice from Merrell Construction in the total amount of $43,895 plus sales tax of $3,072.65. The invoice was issued to Tom Taylor and reflected the amounts already paid to Merrell Construction but not the money paid to TT Construction. The resulting total owed according to the invoice was $28,967.65. The invoice also included the amount of dirt and sand hauled to the Cooley home site, a total of six hundred eleven truck loads. Taylor presented the invoice to Cooley and Cooley refused to pay.
¶ 9. Merrell filed a Notice of Laborer's and Materialman's Lien on the property. The lien amount was for $46,130. The lien on the property prevented the Cooleys from making any further draws on their home construction loan and construction ceased. The Cooleys filed a cross-claim alleging defamation of title of their land by Merrell.
¶ 10. The trial court found in favor of Merrell on the issues of whether a contract existed between Merrill and Cooley and awarded Merrell $28,967.65. All other *Page 843 
relief requested was expressly denied and dismissed with prejudice.
 DISCUSSION
¶ 11. In this instance the appellees, for reasons known only to them, did not file a brief when given the opportunity to do so. When we are left with only the appellant's brief to review, as we are here, we must approach cautiously. However, we are under no obligation to the appellee, when he did not outline his position, to comb through the record in an attempt to form an argument contrary to that of the appellant.Selman v. Selman, 722 So.2d 547, 551 (Miss. 1998); Dethlefs v. BeauMaison Dev. Corp., 458 So.2d 714, 717 (Miss. 1984). In addition, "the failure . . . to file a brief . . . may be `tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of the appealing party, that there was no error.'" Joseph v. Mississippi Employment Sec.Com'n and Great Southern Nat'l Bank, 771 So.2d 410, 412 (¶ 7) (Miss.Ct.App. 2000) (citing Dethlefs, 458 So.2d at 717).
¶ 12. Without the appellee's brief and upon review of Cooley's brief and the record, we are left with the impression that the chancellor did indeed abuse his discretion when dealing with the testimony of the court-appointed expert. Merrell requested that an expert be appointed to survey the land to determine the amount of dirt hauled to the home site. The engineer's testimony was that 375 loads of dirt were hauled onto the home site. Taylor and Merrell's attorney agreed to stipulate to the 375 number that the engineer assessed as opposed to the 591 truck loads for which Cooley was billed.
¶ 13. However, the judge argued with the attorneys on that number. The judge disregarded the expert's report and the stipulation by the parties. His reasoning for this action was that he did not understand why Taylor and Merrell would pay others for something that was not done. He based the conclusion that money was paid for the dirt and the hauling on the tickets/receipts offered by Taylor as evidence of these expenses. He seems to have ignored the obvious possibility that this money may not have been paid out to anyone. Taylor's veracity had been placed into question so this possibility should be investigated.
¶ 14. The question surrounding the amount of dirt delivered was answered when the parties agreed to stipulate to the amount given by the expert. This sudden agreement that there were two hundred less loads delivered begs the question of Taylor's honesty. Others testified that when they realized what Taylor was doing, they quit the job in order to be free of any complications that might arise. The agreement between Taylor and Cooley was that dirt was to come from a location specified by Cooley. Taylor and Merrell decided to obtain dirt elsewhere without Cooley's knowledge or consent. Without knowledge of where the dirt came from, Cooley was unable to keep track of the amount of dirt being moved. He alleges that Taylor was trying to "pad" his pockets and made up tickets in order to be paid for work not really done.
¶ 15. Cooley further questions Taylor's honesty by pointing to the final invoice. Cooley paid two separate construction companies for work done on his home site, TT and Merrell Construction. When Merrell presented the final billing for his work, it was on his invoice and made out to Taylor. This invoice reflected the money paid to Merrell, but it does not reflect the thousands of dollars paid separately to Taylor as Taylor requested. If in fact, Taylor and Merrell were partners, the *Page 844 
invoice should have been made out to Cooley with all payments reflected and deducted on one invoice.
¶ 16. Cooley contends there was no contract with Merrell and that he did not agree to pay on an opened-ended agreement with Taylor. Cooley says he only spoke with Taylor, not to Merrell. Taylor maintains that he and Merrell were partners. Taylor's explanation was that he went out and "got the job" and when he did that Merrell would let him use his machinery. The trial court was swayed by the testimony of Taylor regarding the existence of the partnership. The trial court's reasoning was that Taylor said "we" when he talked about the job. Cooley testified that his understanding was that he was hiring Taylor to be his general contractor on this preparation job. He got that impression from Taylor's words and Taylor's actions. There are too many questions presented and left unsatisfactorily answered in the underdeveloped record and the judge's opinion. We feel that we may not proceed with confidence to affirm, as we are convinced that the argument presented by Cooley may be adequately supported by the facts in the record. We hesitate to reverse a chancellor; however, we reverse and remand for further development of the record.
¶ 17. THE JUDGMENT OF THE PANOLA COUNTY CHANCERY COURT IS REVERSEDAND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., PAYNE, BRIDGES, THOMAS, LEEAND CHANDLER, JJ., CONCUR. IRVING, J. CONCURS IN RESULT ONLY.