835 So.2d 88 (2002)
UNITED PLUMBING & HEATING CO., INC., Appellant
v.
Willie MOSLEY d/b/a Mosley Masonry, Appellee.
No. 2001-CA-01671-COA.
Court of Appeals of Mississippi.
November 26, 2002.
*89 Suzanne N. Saunders, Jackson, Stephanie Anne Taylor, attorneys for appellant.
*90 James W. Newman, III, Jackson, James D. Kopernak, attorneys for appellee.
Before SOUTHWICK, P.J., THOMAS and CHANDLER, JJ.
THOMAS, J., for the Court.
¶ 1. United Plumbing & Heating Co., Inc. (United) was a general contractor for a construction project on the McCoy Federal Building in Jackson, Mississippi. Willie Mosley contracted with United for his company to lay block on the project. When Mosley and his crew arrived to begin laying block, the project was not ready for Mosley to begin. United agreed to pay Mosley and his crew in order to keep them on site so that they could begin laying block as soon as the project was ready. This led to a dispute over how much was owed to Mosley for this down time. Mosley filed suit in county court and received a judgment in his favor. United appealed to the Circuit Court of Hinds County, which affirmed the county court's award. Aggrieved, United asserts the following issues:

I. THE COUNTY COURT ERRED IN FAILING TO SUSTAIN THE OBJECTION MADE BY UNITED TO THE NEW LINE OF EXAMINATION DURING PLAINTIFF'S CASE IN REBUTTAL, WHICH ALLOWED NEW MATTERS INTO EVIDENCE UNCONTESTED.

II. THE COUNTY COURT ERRED IN FAILING TO DIRECT A VERDICT IN FAVOR OF UNITED AND IN FAILING TO AWARD MOSLEY A SUM NOT EXCEEDING $1,804.95.

III. THE COUNTY COURT ERRED BY ENTERING ITS JUDGMENT IN FAVOR OF MOSLEY FOR THE AMOUNT OF $5,648.80, PLUS REASONABLE ATTORNEY'S FEES OF $1,882.93.

IV. THE COUNTY COURT ERRED BY DENYING UNITED'S MOTION TO SET ASIDE THE FINAL JUDGMENT AND ENTER A CORRECT FINAL JUDGMENT, OR IN THE ALTERNATIVE GRANT A NEW TRIAL.

V. THE VERDICT OF THE COUNTY COURT AND AFFIRMATION BY THE CIRCUIT COURT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding error, we reverse and remand.

FACTS
¶ 2. General Services Administration (GSA) hired United Heating and Plumbing, Inc. to serve as general contractor for a project including construction of two new jail cells for the Immigration and Naturalization Service at the McCoy Federal Building in Jackson, Mississippi. United subcontracted with Willie Mosley's company, Mosley Masonry, to lay blocks for the holding cells. The agreed price was $6.50 per block. Mosley and crew arrived to begin work on August 20, 1997, but the site was not ready for them to begin, and they were asked to return in one week. On August 27, Mosley and crew arrived at the site and were again told that the site was not ready for them to begin. Instead of negotiating a new starting date, a deal was made to compensate Mosley's crew to remain on the job site until it was ready for block laying. It is this deal that is in dispute.
¶ 3. In order to keep Mosley and his crew on the job site, United agreed to compensate Mosley for reasonable costs plus labor burden and profit/overhead. Specifics were not discussed. Mosley testified *91 that he made the agreement with Homer Thomas, co-owner of United. However, Maurice Thomas, another co-owner of United, testified that it was he who made the agreement with Mosley. Maurice also testified that it was not necessary for Mosley and his crew to actually work during the down time, but that they were being compensated simply to remain on the job site and not take another job at another location. Mosley and his crew did work, however, helping to perform some demolition work, hauling materials for the block laying into better position, hauling away some trash, and helping hang sheetrock. This took place for three full days, August 27, 28, 29, and a partial day on September 1. Since September 1 was a holiday, it was agreed that they would receive double time for their hours on that day.
¶ 4. There is a disagreement regarding exactly how many days Mosley's crew had to wait before they began laying block. Based on Maurice Thomas's records and memory, United claims that Mosley's crew began laying block on the outside perimeter walls on the next two days, September 2 and 3, and began laying blocks for the jail cells on September 4. United asserts that the blocks laid around the perimeter are included in Mosley's contract for $6.50 per block. Mosley turned in a bill requesting payment for down time for all six days through and including September 3, after which he began laying blocks on the jail cell as the original agreement had specified. At trial, however, when asked by the judge, Mosley testified that he began laying blocks on Wednesday, September 3. It is not clear from the record whether Mosley was referring to the blocks around the perimeter walls or in the jail cells.
¶ 5. Mosley and United also disagree about the computation of the payment due under the cost plus agreement. United believed the agreed price was Mosley's payroll plus 22.8 percent labor burden and 25 percent profit and overhead. Mosley believed he was entitled to 42 percent labor burden and 15 percent profit. Mosley claims that he used United's percentage values in order to calculate the bill he sent to them. However, Mosley requested an hourly wage rate for himself which United argues is improper. According to United, Mosley is paid out of the 25 percent profit and overhead addition and that it is not industry custom for a subcontractor to receive his negotiated profits and an hourly wage. Mosley testified that although he was not on site the entire time, he was hauling equipment and supplies to the work site and that he performed valuable services that justified an hourly rate. This led to another dispute regarding overtime on the weekend of September 13 and 14, when Mosley's crew was allowed overtime pay on top of their per block contracted price. Mosley again billed an hourly rate for himself which United disputes.
¶ 6. Mosley received payment in the amount of $11,744. An additional check for $1,804 was tendered to Mosley for payment in full but he refused to accept it. It is unclear from the record exactly how United arrived at this figure. Maurice Thomas testified that he did not include an hourly rate for Mosley, nor did he include the two days in dispute, September 2 and 3, when Thomas recorded that Mosley's men began laying block. However, when Thomas's calculations are repeated, the amount still owed to Mosley is $2,173.25. In its brief, United provides eight "conceivable methods" for calculating the amount owed to Mosley. These amounts vary from a high of $4,575.44, where United used Mosley's percentage figures for labor burden and profit/overhead, allowed *92 Mosley an hourly wage, and allowed September 2 as down time, to a low of $2,173.25, figured in what appears to be the method used by Maurice Thomas. It is noted that $1,804 was not arrived at in any of the eight "conceivable methods."
¶ 7. Mosley brought suit in Hinds County Circuit Court for $5,648.80, which he claims to be the amount due using United's percentages for the cost plus calculations. Mosley arrived at his calculation by totaling up his time sheets, including an hourly wage for himself and including both disputed days. He then multiplied this total by United's percentages for labor burden and profit/overhead. It was pointed out in the record that Mosley made an error in figuring the amount of overtime for the workers on September 1. Mosley billed double time for the workers for the full eight hours, although the time sheet clearly states that the workers worked only five hours on that day. Nevertheless, the Hinds County Court, without findings of fact or conclusions of law, awarded Mosley the full $5,648.80 requested. United appealed, and the Circuit Court of Hinds County affirmed the judgment, again without findings of fact or conclusions of law. United perfected an appeal to this Court.

ANALYSIS

I. DID THE COUNTY COURT ERR IN FAILING TO SUSTAIN THE OBJECTION MADE BY UNITED TO THE NEW LINE OF EXAMINATION DURING PLAINTIFF'S CASE IN REBUTTAL, WHICH ALLOWED NEW MATTERS INTO EVIDENCE UNCONTESTED?
¶ 8. Although United lists the county court's failure to sustain the objection made by United during Mosley's case in rebuttal in its assignments of error, it failed to address this issue in its brief and did not provide any argument or authority in support of it. It is their duty "to provide authority in support of an assignment of error." McNeil v. Hester, 753 So.2d 1057, 1075 (¶ 65) (Miss.2000) (citing Hoops v. State, 681 So.2d 521, 526 (Miss.1996); Kelly v. State, 553 So.2d 517, 521 (Miss. 1989); Smith v. State, 430 So.2d 406, 407 (Miss.1983); Ramseur v. State, 368 So.2d 842, 844 (Miss.1979)). Failure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment. Powell v. Cohen Realty, Inc., 803 So.2d 1186, 1190 (¶ 5) (Miss.Ct. App.1999); Collier v. McCain, 742 So.2d 1202, 1204 (¶ 10) (Miss.Ct.App.1999) (citing Williams v. State, 708 So.2d 1358, 1360 (Miss.1998)).
¶ 9. Even if we were to disregard the procedural bar for lack of authority, we would find no error. The time and manner of introducing evidence is committed to the sound discretion of the trial judge. Deas v. Andrews, 411 So.2d 1286, 1291 (Miss.1982) (citing Winterton v. Illinois Cent. R.R., 73 Miss. 831, 836, 20 So. 157, 158 (1896)). This Court will not reverse unless the exercise of discretion appears arbitrary, capricious or unjust. Id. In the case at hand, Willie Mosley was recalled to the stand in rebuttal in order to clear up with whom he felt the contract had been made. Maurice Thomas had testified for United that it was he that made an agreement with Mosley. Mosley testified in rebuttal that it was Maurice's brother Homer whom he had dealt with and not Maurice. The trial court's decision to allow this testimony was not arbitrary, capricious, or unjust. This issue is without merit.

*93 II. DID THE COUNTY COURT ERR IN FAILING TO DIRECT A VERDICT IN FAVOR OF UNITED AND IN FAILING TO AWARD MOSLEY A SUM NOT EXCEEDING $1,804.95?

III. DID THE COUNTY COURT ERR BY ENTERING ITS JUDGMENT IN FAVOR OF MOSLEY FOR THE AMOUNT OF $5,648.80, PLUS REASONABLE ATTORNEY'S FEES OF $1,882.93?

IV. DID THE COUNTY COURT ERR BY DENYING UNITED'S MOTION TO SET ASIDE THE FINAL JUDGMENT AND ENTER A CORRECT FINAL JUDGMENT, OR IN THE ALTERNATIVE GRANT A NEW TRIAL?

V. WAS THE VERDICT OF THE COUNTY COURT AND AFFIRMATION BY THE CIRCUIT COURT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 10. In its brief, United fails to follow its own issues listed above. Instead, they argue that Mosley failed to prove a contract was formed because price, as an essential term, was not sufficiently definite. Alternately, United argues that if a contract was formed, Mosley failed to prove his actual labor costs and he incorrectly calculated the amount still outstanding. Based on these factors, United argues that the judgment in favor of Mosley was against the overwhelming weight of the evidence and that a new trial should be granted.
¶ 11. In any case where a trial court's ruling is to be reviewed, we follow the same path each time. "This Court will always review a chancellor's findings of fact, but the Court will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." Cummings v. Benderman, 681 So.2d 97, 100 (Miss.1996) (citing Smith v. Dorsey, 599 So.2d 529, 533 (Miss.1992)). "[A] finding of fact is clearly erroneous when: although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." Cooley v. Merrell, 788 So.2d 840, 841 (¶ 3) (Miss.Ct. App.2001) (citing Heidel v. State, 587 So.2d 835, 839 (Miss.1991)). A county judge sitting as a finder of fact is no different than a chancellor.
¶ 12. In accordance with this standard of review, this Court may not overturn the decision of the trial judge unless, after looking at the record as a whole, we find that his decision was not supported by substantial evidence. Murphree v. W.W. Transp., 797 So.2d 268, 272 (¶ 11) (Miss.Ct.App.2001). Without findings of fact or conclusions of law, it is difficult for this Court to determine how the trial court arrived at its decision to award Mosley the full amount he requested plus reasonable attorney's fees and interest, even when it appears in the record that the court knew that Mosley had incorrectly calculated the overtime hours on September 1. This error, charging double time for eight hours rather than five for the men who worked on September 1, amounts to $660.05, if Mosley is not entitled to an hourly wage, and $921 if Mosley is entitled to an hourly wage. Lacking an explanation of the reasoning behind awarding Mosley the full amount despite this error in calculation, the trial court erred in awarding Mosley $5,648.80 because it is not supported by the evidence.
*94 ¶ 13. The record is not clear, and it is not this Court's position as a reviewing court limited to the facts and evidence provided to it to determine how much United owes Mosley. Murphree, 797 So.2d at 273 (¶ 12). It is undisputed that United does owe Mosley for the down time accumulated while working on the McCoy Federal Building. Even if taken in a light most favorable to Mosley, it appears that due to his calculation error the amount requested and received was too large. We cannot assume that the trial court intended to award the amount requested, but overlooked the need for a correction. United's brief appears to agree that the amount offered, $1,804, was too little.
¶ 14. Since we find that the evidence does not support the award of $5,648.80 that the trial court granted, but that the evidence does support some award, we reverse and remand to the trial court for further proceedings consistent with this opinion.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.