ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. This appeal stems from the Madison County Chancery Court’s award of property to Walter Hudson by adverse possession, as well as the award of $821 in damages for the destruction of plants on the property. Aggrieved by the chancellor’s award Of property and damages, Rebecca Conliff appeals.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Therman Howard owned an eighty-acre tract of land located in Madison
 
 *205
 
 County. On September 11, 1974, Conliff purchased a forty-acre tract of land from the eighty-acre tract owned by Howard. On October 11, 1977, Hudson purchased the remaining forty-acre tract of land from Howard. These tracts are adjacent, with Conliffs tract of land being on the west side of Hudson’s tract. Shortly after his purchase, Hudson had his residence constructed on his property. Apparently, neither property owner had their land surveyed until years later.
 

 ¶ 3. An old fence line between the parties’ property was thought by Hudson to be the property boundary. Believing the property all the way to the old fence to be his, Hudson planted shrubs, trees, flowers, and installed a water line on the property east of the old fence. The parties lived this way until Conliff had her property surveyed on August 29, 1996. The survey revealed that her actual boundary line was not the old fence line but was actually within eight feet of Hudson’s home. The actual boundary line now showed Conliff to be the owner of the property Hudson had previously developed east of the fence line. After a disagreement arose between Hudson and Conliff over ownership of the disputed piece of property lying between the old fence and survey line, Conliff prepared and Hudson executed a lease agreement for the disputed property spanning twenty-nine feet in width from the old fence line to what the survey indicated was the actual boundary of Conliffs property. Hudson testified that he only entered into the lease to keep the peace with Conliff. The first lease was executed on September 24, 1996, and was for a term of one year. In the lease, the property is described as:
 

 Beginning at the first metal fence post past the southeast corner of the Tractor Barn go South 200 feet turn East to the surveyed line approx. 29 feet turn North 200 feet along surveyed line, turn West approx. 29 feet to the same metal fence post South of the Tractor Barn described as the beginning point.
 

 ¶ 4. A second lease was executed on November 5, 1997, with the same property description, but the lease was now for a term of sixty months. Approximately five years later and at the termination of this second lease, Conliff decided not to renew it. In 2003, Conliff sent Hudson a letter telling him to remove his belongings off the property because “he had trashed the property.” She also filed charges against Hudson in 2003 for violating the lease and malicious mischief. Then, in 2005, Conliff had a bulldozer tear down the existing old fence separating ■ the property and constructed a new barbed wire fence on the survey line which came within a few feet of Hudson’s back steps. She also destroyed the plants that Hudson had planted on the property prior to the 1996 survey.
 

 ¶ 5. On August 12, 2004, Hudson filed a complaint to confirm and quiet title to the twenty-nine feet of property he had previously occupied and was currently leasing from Conliff. Hudson then filed an amended complaint seeking to confirm and quiet title to the property, an adjudication that Hudson owned the disputed tract through adverse possession, and damages for Conliffs destruction of the plants on the disputed tract of land. Hudson also sought to have Conliff remove a video camera that was directed at his property.
 

 ¶ 6. The chancery court held that Hudson had sufficiently proven his ownership of the property through adverse possession, awarded him the disputed property plus damages in the amount of $821 for Conliffs destruction of the plants and shrubs on the property, and enjoined Con-liff from using the video camera to view Hudson’s property. The chancery court found that the lease’s description was invalid because it inadequately described the
 
 *206
 
 property being leased, but even if the lease was valid, the only way Conliff could have reacquired title to the property was through adverse possession.
 

 ¶ 7. Conliff now appeals raising four issues:
 

 I. Whether the chancery court applied a clearly erroneous legal standard by ruling that Hudson’s adverse-possession claim was “reactivated.”
 

 II. Whether the chancery court erred in its findings of fact that Hudson had satisfied the adverse-possession element of claim of ownership.
 

 III. Whether the chancery court committed manifest error by holding the lease between the parties invalid for insufficiency of the legal description.
 

 IV. Whether the chancery court committed manifest error by incorrectly describing the boundary line between the parties’ property.
 

 Finding no error, we affirm.
 

 DISCUSSION
 

 ¶ 8. When reviewing a chancellor’s decision, our standard of review is limited.
 
 Nichols v. Funderburk,
 
 883 So.2d 554, 556 (¶ 7) (Miss.2004). The chancellor’s determinations will only be reversed when they were manifestly wrong, clearly erroneous, or when the chancellor applied an incorrect legal standard.
 
 Id.
 
 Generally, a finding that the proof of adverse possession was insufficient is factual and requires the application of the substantial-evidence/manifest-error rule.
 
 Walker v. Murphree,
 
 722 So.2d 1277, 1280 (¶ 15) (Miss.1998). However, this Court has stated “the analysis of this issue will deal with the chancellor’s holding that an adverse[-]possession claim can be reactivated, and since this is a finding of law we must engage in de novo review.”
 
 Gillespie v. Kelly,
 
 809 So.2d 702, 706 (¶ 12) (Miss.Ct.App.2001).
 

 I. Adverse Possession
 

 ¶ 9. Conliff first asserts that the chancellor erred in both allowing Hudson to “reactivate” his prior adverse possession and granting Hudson the property by adverse possession. She argues that even if Hudson satisfied all the elements of adverse possession prior to 1996, by voluntarily entering into the lease, Hudson abandoned his ownership of the property. Mississippi Code Annotated section 15 — 1— 13(1) (Rev.2003) governs adverse-possession claims and provides in part:
 

 Ten (10) years’ actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued,
 
 shall vest
 
 in every actual occupant or possessor of such land a
 
 full, complete title
 
 ....
 

 A six-element test is relied upon by the chancery court when assessing claims of adverse possession. The party claiming adverse possession must show, by clear and convincing evidence as to each element, that his possession was (1) under a claim of right or ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.
 
 Rice v. Pritchard,
 
 611 So.2d 869, 871 (Miss.1993);
 
 Thornhill v. Caroline Hunt Trust Estate,
 
 594 So.2d 1150, 1152-53 (Miss.1992);
 
 Stallings v. Bailey,
 
 558 So.2d 858, 860 (Miss.1990).
 

 ¶ 10. In
 
 Gillespie,
 
 809 So.2d at 707 (¶ 14), a case which both parties cite in their briefs, the majority of this Court held that since several of the Kellys’ predecessors in title, and the Kellys themselves, had permission to use the easement, no prior claims of adverse-possession ripened.
 
 *207
 
 The Kellys were not permitted to “reactivate” their adverse possession claim by combining their two periods of adverse possession that were divided by a period of permissive use.
 
 Id.
 
 However, Judge Southwick, in his concurring opinion, found that the majority missed two important points in its analysis.
 
 Id.
 
 at 710 (¶ 28) (Southwick, P.J., concurring). The first point being that: “Once adverse possession has begun, the record title owner cannot stop the running of the period merely by granting permission.”
 
 Id.
 
 Judge Southwick distinguished possession beginning without permission from the title owner and possession beginning with permission from the title owner.
 
 Id.
 
 at 710-11 (¶¶ 29-30). In the current case, it is undisputed that Hudson began his possession without permission from Conliff, the title owner. Further, the Mississippi Supreme Court has held that an offer to pay for land after an adverse-possession title has ripened is not a disclaimer of title.
 
 Rotenberry v. Arnold,
 
 212 Miss. 564, 566, 55 So.2d 141, 142 (1951).
 

 ¶ 11. The second point is that “[rjegardless of the time during which permissive use may have interrupted the continuity of the possession, it is alleged that adverse possession had prior to then already created title.
 
 Once adverse possession creates an easement, it cannot be lost by the record title owner granting permission.” Gillespie,
 
 809 So.2d at 710 (¶ 28) (Southwick, P.J., concurring) (emphasis added). In the current case, it is undisputed that prior to signing the lease in September 1996, Hudson had been in possession of the disputed property since 1977. He satisfied all six elements of adverse possession by clear and convincing evidence between 1977, when he purchased the property, and August 1996, when Con-liff had the survey done; thus, he acquired title to the disputed parcel by adverse possession. It is well-settled Mississippi law that once the elements of adverse possession have been satisfied, a full and complete title is vested in the adverse possessor.
 
 Levy v. Campbell,
 
 200 Miss. 721, 728, 28 So.2d 224, 226 (1946). Further, in
 
 Fant v. Williams,
 
 118 Miss. 428, 79 So. 343, 345 (1918), the Mississippi Supreme Court held “that land acquired by adverse possession cannot be lost by mere abandonment.” Once title has been acquired by adverse possession, “it is not relinquished merely by the new owner’s indicating a belief in the former owner’s title.”
 
 Gillespie
 
 809 So.2d at 711 (¶ 32) (Southwick, P.J., concurring). “[Tjitle can be lost only by proper transfer, such as deed, will, or intestacy, or by another period of possession ripening title in a new adverse user.”
 
 Id.
 
 (citing
 
 Lowi v. David,
 
 134 Miss. 296, 302, 98 So. 684, 685 (1924)). While it is true Hudson waited from August 1996 when the line was surveyed until August 2004 to file his suit to quiet and confirm title, we note that the statute of limitations on the filing of such a suit is ten years. Miss.Code Ann. § 15-1-7 (Rev.2003).
 

 ¶ 12. We hold that once Hudson satisfied the elements of adverse possession, title to the disputed parcel vested in him. For Conliff to thereafter establish a superior claim to the disputed parcel, she would have to meet all six elements of adverse possession by clear and convincing proof. This she failed to do. There simply was no necessity to “reactivate” Hudson’s adverse-possession claim after the survey or the execution of the lease.
 

 ¶ 13. This issue is without merit.
 

 II. Lease’s Property Description
 

 ¶ 14. Conliff also asserts that it was error for the chancellor to hold that the lease was invalid because the description was not sufficient. Our resolution of the prior issue renders this issue moot.
 

 
 *208
 
 III. Boundary-Line Description
 

 ¶ 15. The final issue Conliff asserts is that the chancellor committed manifest error by incorrectly describing the parties’ new boundary line. An appellant is required “to provide authority in support of an assignment of error.”
 
 Taylor v. Kennedy,
 
 914 So.2d 1260, 1262 (¶ 4) (Miss.Ct.App.2005) (citing
 
 United Plumbing & Heating Co., Inc. v. Mosley,
 
 835 So.2d 88, 92 (Miss.Ct.App.2002)). The “[fjailure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment [of error].”
 
 Id.
 
 In the present case, Conliff failed to cite to any legal authority in her original brief or reply brief to support this issue; therefore, we will not consider it. However, pursuant to Mississippi Rule of Civil Procedure Rule 60(a), this Court grants leave to the chancery court to correct, if necessary, any clerical errors that may be found in the boundary-line description contained in the judgment.
 
 [1]
 

 ¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE, C.J, IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Mississippi Rule of Civil Procedure Rule 60(a) provides: Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders up until the time the record is transmitted by the clerk of the trial court to the appellate court and the action remains pending therein. Thereafter, such mistakes may be so corrected only with leave of the appellate court.