# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01347-COA

| | |
|---|---|
| **WILLIE LEE WINTERS AND OPHELIA WINTERS** | **APPELLANTS** |

**v.**

| | |
|---|---|
| **PRESTON BILLINGS AND ALMETA H. BILLINGS** | **APPELLEES** |

| | |
|---|---|
| DATE OF JUDGMENT: | 08/31/2017 |
| TRIAL JUDGE: | HON. WATOSA MARSHALL SANDERS |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | ROBERT G. JOHNSTON |
| | JOHN MARSHALL ALEXANDER |
| ATTORNEY FOR APPELLEES: | ELLIS TURNAGE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 01/15/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1. This is an appeal from the Bolivar County Chancery Court. The Winterses assert that: (1) the chancellor incorrectly applied the elements of adverse-possession law; (2) the chancellor incorrectly denied judicial estoppel; and (3) the chancellor wrongly awarded attorney's fees and expenses. We affirm in part and reverse and render in part.

## FACTS AND PROCEDURAL HISTORY

¶2. The Billingses purchased their land in 1984 from the estate of Pearl Strickland. They had a survey done that showed that the white picket fence installed by Ms. Strickland was

within the bounds of their land and ten feet north of their southern boundary. Shortly thereafter, they replaced the picket fence with a chain-link fence. The Billingses maintained the fence and surrounding area and shrubbery until 1991.

¶3.　The Winterses purchased the neighboring land in 1991. They bought the property without having a survey done and instead relied on the seller's statement that the chain-link fence was the property line. At the time of the purchase, Mr. Winters had a conversation with Mr. Billings about the property line; what was said, precisely, is disputed. Mr. Billings testified that he gave Mr. Winters permission to use the land, whereas Mr. Winters testified that Mr. Billings did not give him permission. Regardless, Mr. Winters testified that he maintained the fence and the surrounding area and shrubbery from 1991 until 1997. He further testified that his family used the property just south of the fence for barbecue events, softball, and volleyball.

¶4.　The Winterses testified that in 1994, they moved a trailer onto their property around seven to eight feet south of the fence. They used this trailer as a beauty shop until 1997, when their home burned down, and they moved into the trailer until their new home was constructed one year later. They removed the trailer in 2012.

¶5.　In 2014, the Winterses went on vacation, and the Billingses removed the fence because it was in bad condition and a safety hazard. The Billingses then had two surveys done to designate their property lines. These surveys showed that the now-destroyed fence stood ten feet north of their southern boundary, the same property line as determined by their earliest survey nearly thirty years before.

2

¶6. Several months later, the Winterses filed a Complaint to Adjudicate Title and for Other Relief against the Billingses in the Bolivar County Chancery Court. They asked the chancellor to: (1) adjudicate them to be the owners of the contested property; (2) award them damages for negligent, wrongful, tortious, and intentional trespass against the Billingses; (3) require the Billingses to pay for the costs of replacing the fence; (4) award damages for mental and emotional distress; (5) award attorney's fees; (6) award punitive damages for the malicious and outrageous conduct of the Billingses; and (7) enjoin the Billingses temporarily and permanently from any future trespassing.

¶7. Two years later, the Winterses filed an amended complaint alleging ownership of the property by adverse possession.

¶8. The chancellor denied the Winterses' claim of adverse possession, found the Winterses' claim for compensation moot, denied the Winterses' claim for judicial estoppel, and granted the Billingses' request for attorney's fees.

¶9. The Winterses now appeal. They claim that: (1) the chancellor incorrectly applied the elements of adverse-possession law; (2) the chancellor incorrectly denied judicial estoppel; and (3) the chancellor wrongly awarded attorney's fees and expenses.

**STANDARD OF REVIEW**

¶10. "When reviewing a chancellor's decision, our standard of review is limited." *Conliff v. Hudson*, 60 So. 3d 203, 206 (¶8) (Miss. Ct. App. 2011) (citing *Nichols v. Funderburk*, 883 So. 2d 554, 556 (¶7) (Miss. 2004)). "The chancellor's determinations will only be reversed when they were manifestly wrong, clearly erroneous, or when the chancellor applied an

3

incorrect legal standard." *Id.*

## DISCUSSION

**I.      Did the chancellor incorrectly apply the elements of adverse-possession law?**

¶11.    The Winterses' first issue on appeal is whether the chancery court incorrectly applied the elements of adverse-possession law.

¶12.    Section 15-1-13(1) of the Mississippi Code Annotated (Rev. 2012) defines adverse possession:

> Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title . . . .

It is well-established that we apply a six-part test to determine whether adverse possession has occurred: "for possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Powell v. Meyer*, 203 So. 3d 648, 652 (¶18) (Miss. Ct. App. 2016) (quoting *Walker v. Murphree*, 722 So. 2d 1277, 1281 (¶16) (Miss. Ct. App. 1998)). Furthermore, the "[o]ne who seeks to acquire real property by adverse possession must demonstrate . . . [those] six elements by clear and convincing evidence . . . ." *Massey v. Lambert*, 84 So. 3d 846, 848 (¶7) (Miss. Ct. App. 2012).

¶13.    Importantly, "[t]he adverse possessor must hold the property without the permission of the true title owner since 'permission defeats adverse possession.'" *Stasher v. Perry*, 217 So. 3d 765, 769 (¶12) (Miss. Ct. App. 2017) (quoting *Apperson v. White*, 950 So. 2d 1113,

4

1118 (¶12) (Miss. Ct. App. 2007)). And although the Winterses assert that Mr. Billings falsely testified when he claimed that he gave the Winterses permission to use the property, "[t]he credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts." *O'Briant v. O'Briant*, 99 So. 3d 802, 806 (¶19) (Miss. Ct. App. 2012) (quoting *Johnson v. Gray*, 859 So. 2d 1006, 1014 (¶36) (Miss. 2003)).

¶14.    The chancellor found that Mr. Billings did, in fact, give the Winterses permission, and this permission alone should have negated the Winterses' ability to adversely possess the property. *E.g.*, *Stasher*, 217 So. 3d at 769 (¶12). But because this permission was disputed by the Winterses, the chancellor still analyzed the six elements of adverse-possession law. We recognize that Mr. Billings's permission defeats the Winterses' adverse-possession claim. And given our standard of review, we find no reversible error in the chancellor's determination that the Winterses did not demonstrate all of those elements by clear and convincing evidence. *Rester v. Greenleaf Res. Inc.*, 198 So. 3d 472, 477 (¶18) (Miss. Ct. App. 2016); *Dean v. Slade*, 63 So. 3d 1230, 1235 (¶21) (Miss. Ct. App. 2010). Thus, we affirm the chancellor's decision and find that the Winterses did not adversely possess the disputed land.[1]

       1.    *Claim of Ownership*

---

[1] We note from the record that the original plat of Campronovo's Addition to the Town of Shelby, dated 1900, shows the lot lines that separate the Billingses' property from the Winterses' which are consistent with the Billingses' argument.

¶15.    Regarding the claim-of-ownership element, the Winterses note that the chancellor determined that because the fence was constructed by the Billingses, the Winterses could not claim title. The Winterses state that "[i]t should make no difference, who put the fence up, if the neighbor possesses up to the fence, under the requisite circumstances, for the requisite 10 year period."

¶16.    "[T]he chancellor must determine whether the purported adverse possessor's actions were sufficient to 'fly a flag over the property' and put the actual owners on notice that the property was 'being held under an adverse claim of ownership.'" *Roberts v. Young's Creek Inv. Inc.*, 118 So. 3d 665, 669 (¶8) (Miss. Ct. App. 2013) (quoting *Apperson*, 950 So. 2d at 1117 (¶7)). The Winterses are correct in noting that the chancellor considered who constructed the fence, but the chancellor also considered several other pertinent details, including that the Winterses never planted any of the shrubbery or seasonal flowers on the disputed line and that it was unclear how frequently the Winterses' barbecues took place. Therefore, we agree with the chancellor that the Winterses were unable to satisfy the claim-of-ownership element by clear and convincing evidence.

### 2.    *Adverse or Hostile*

¶17.    Next, the Winterses dispute the adverse or hostile element. They posit that the chancellor misunderstood this element as "acrimonious or argumentative" and that its holding that the Winterses did not possess the land with hostility was an error of law. We define possession as "effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses. It includes control over the land and the intent

6

to exclude others except with the occupant's consent." *Blankinship v. Payton*, 605 So. 2d 817, 819-20 (Miss. 1992). "Possession is hostile and adverse when the adverse possessor intends to claim title notwithstanding that the claim is made under a mistaken belief that the land is within the calls of the possessor's deed." *Wicker v. Harvey*, 937 So. 2d 983, 994 (¶34) (Miss. Ct. App. 2006).

¶18.    To prove this element, the Winterses must have acted in a manner that constituted effective control over the disputed acreage that was visible to the eye or perceptible to the senses. *Roberts*, 118 So. 3d at 670 (¶10). The chancellor found that the Winterses did not build the fence or occupy the land in a way that constituted effective control; rather, their occupation was temporary and limited. We agree, therefore, that the Winterses did not prove the adverse or hostile element by clear and convincing evidence.

### 3.    *Open, Notorious, and Visible*

¶19.    Third, the Winterses assert that the chancellor incorrectly applied the open, notorious, and visible element because the chancellor determined that the Winterses must have given the Billingses actual notice of their occupation. "To satisfy [the open, notorious, and visible] element, the possessor 'must unfurl his flag on the land, and keep it flying, so that the actual owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest.'" *Id.* at (¶13) (quoting *Wicker*, 937 So. 2d at 994 (¶35)). While the chancellor did imply that the Winterses needed to notify the Billingses "that their possession was hostile to the Billings' claim of ownership," we find that this element still was not met. It was the Billingses who paid taxes on the land, an important factor. *Broadus v. Hickman*,

50 So. 2d 717, 720 (Miss. 1951). And it was the Billingses who surveyed the land, another important factor. *Grantham v. Masonite Corp.*, 67 So. 2d 727, 728 (Miss. 1953). Under our limited standard of review, we affirm the chancellor's decision that the Winterses were unable to satisfy the open, notorious, and visible element.

### 4. Continuous and Uninterrupted for a Period of Ten Years

¶20. The Winterses move to the fourth element of adverse possession: continuous and uninterrupted possession for a period of ten years. Miss. Code Ann. § 15-1-13. But the Winterses did not prove with clear and convincing evidence that their barbecue events, softball, and volleyball games were regular activities. Rather, testimony indicated that most of these activities took place in front of their house and not on the narrow strip of contested land. "[M]ere sporadic, noncontinuous use is insufficient" to establish continuous and uninterrupted possession. *Buford v. Logue*, 832 So. 2d 594, 603 (¶25) (Miss. Ct. App. 2002). Therefore, we affirm the chancellor's decision that the Winterses did not establish this element by clear and convincing evidence.

### 5. Exclusive

¶21. "Exclusive possession is 'an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising dominion of a sole owner.'" *Cronier v. ALR Partners L.P.*, 248 So. 3d 861, 870 (¶32) (Miss. Ct. App. 2017) (quoting *Wicker*, 937 So. 2d at 995 (¶40)). The Winterses assert that the trees, power lines, and maintenance of the lawn, among other things, were ignored by the chancellor.

8

¶22. The chancellor found that both the Winterses and the Billingses accessed and used the disputed property from 1991 until 2017. And "joint use of property is insufficient to establish adverse possession." *Riverland Plantation P'ship v. Klingler*, 942 So. 2d 294, 298 (¶14) (Miss. Ct. App. 2006). Furthermore, the chancellor found that the Winterses erected nothing to exclude the Billingses from the land and that the Billingses "paid taxes on the disputed property, had stumps removed, had the burned house removed, removed the damaged chain link fence, and also kept their side of the fence cut." The Winterses did not prove this element by clear and convincing evidence. Thus, we affirm the chancellor's judgment.

### 6. Peaceful

¶23. The final adverse-possession element that the Winterses must prove by clear and convincing evidence is that their occupation was peaceful. The chancellor held that it was, and there is no evidence to indicate otherwise. We agree that this element was satisfied.

## II. Did the chancellor incorrectly deny judicial estoppel?

¶24. The Winterses assert that because Mr. Billings made seven statements in sworn interrogatories that he never spoke with Mr. Winters about the land, the chancellor should have judicially estopped Mr. Billings from asserting that he gave Mr. Winters permission to use the land.

¶25. "Judicial estoppel is designed to protect the judicial system and applies where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Kirk v. Pope*, 973 So. 2d 981, 991 (¶31) (Miss. 2007) (internal quotation mark omitted). Our supreme court has held that there are three

9

elements of judicial estoppel: "A party will be judicially estopped from taking a subsequent position if (1) the position is inconsistent with one previously taken during litigation, (2) a court accepted the previous position, and (3) the party did not inadvertently take the inconsistent positions." *Clark v. Neese*, 131 So. 3d 556, 560 (¶16) (Miss. 2013).

¶26.    The chancellor found that the jointly-submitted pretrial order indicated that "Mr. Billings gave Mr. Winters and his family 'permission' to use the disputed strip of property" and that the pleadings were amended to conform to that pretrial order. Furthermore, the chancellor noted that Mr. Winters indicated in his own testimony that he spoke with Mr. Billings about the land, and only the contents of that conversation were disputed. We also note that the interrogatories were vague as to their actual subject, but they meant to elicit general responses and do not focus on permission or lack thereof. "A chancellor sits as a fact-finder and in resolving factual disputes, is the sole judge of the credibility of witnesses." *Tice v. Shamrock GMS Corp.*, 735 So. 2d 443, 444 (¶3) (Miss. 1999). In this position, the chancellor may assess the materiality and relevance of answers to interrogatories, along with any inconsistent testimony thereto at trial and decide on its credibility. Mr. Billings's assertion was not inconsistent with a prior position taken during litigation, the chancellor had not accepted the previous position, and the chancellor's holdings indicated that at most Mr. Billings inadvertently may have taken the inconsistent positions.

¶27.    Under our limited standard of review, we hold that the chancellor's holding was not manifestly wrong or clearly erroneous, nor did the chancellor apply an incorrect legal standard. Thus, we affirm.

### III. Did the chancellor wrongly award attorney's fees and expenses?

¶28. "[T]he standard of review regarding attorneys' fees is the abuse of discretion standard, and such awards must be supported by credible evidence." *Jordan v. Fountain*, 986 So. 2d 1018, 1021 (¶7) (Miss. Ct. App. 2008).

¶29. Under Rule 11(b) of our rules of civil procedure, "[i]f any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay . . ." then a chancellor may order a party to pay expenses or attorney's fees. M.R.C.P. 11(b). "A claim is frivolous when objectively speaking, the pleader or movant has no hope of success." *Ill. Cent. R.R. Co. v. Broussard*, 19 So. 3d 821, 824 (¶11) (Miss. Ct. App. 2009) (internal quotation mark omitted).

¶30. The chancellor found that the Winterses acted in bad faith, that their claim was entirely meritless, and that they filed only to harass the Billingses. However, we find that the record contradicts this. The Winterses submitted an affidavit by their former attorney, in which he indicates that he evaluated the Winterses' claim for adverse possession on *Evans v. Archer*, No. 2001-443 (Coahoma Cty. Chancery Ct. Dec. 21, 2001), that he visited the contested site before filing suit, and that Mr. Winters acted at all times on his professional advice. At no time did the attorney suspect that Mr. Winters was acting in bad faith. We note that the Winterses had a colorable claim,[2] and their action was not frivolous or intended to harass the Billingses.

¶31. We find, therefore, that the chancellor abused discretion in awarding attorney's fees,

---

[2] "A colorable claim or action is one appearing to be true, valid, or right." *In re City of Biloxi*, 113 So. 3d 565, 570 (¶13) (Miss. 2013) (internal quotations marks omitted).

and, thus, we reverse the chancellor's decision and render a judgment that the award of attorney's fees and expenses is improper.[3]

## CONCLUSION

¶32.    We find that: (1) the chancellor did not manifestly err in applying the correct elements of adverse-possession law; (2) the chancellor did not manifestly err in denying the elements of judicial estoppel; and (3) the chancellor wrongly awarded attorney's fees and expenses. Thus, we affirm in part and reverse and render in part.

¶33.    **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**GRIFFIS, C.J., BARNES AND CARLTON, P.JJ., WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, LAWRENCE AND McCARTY, JJ., NOT PARTICIPATING.**

---

[3] On December 19, 2017, the Billingses filed a motion for post-judgment interest on attorney's fees. The Winterses responded on December 28, 2017, and our supreme court passed their motion for consideration with the merits of the appeal on February 5, 2018. We deny this motion based on our decision to overrule the award of attorney's fees. M.R.A.P. 37.