937 So.2d 983 (2006)
Dwight F. WICKER, Appellant
v.
James Ford HARVEY, Appellee.
No. 2005-CA-00596-COA.
Court of Appeals of Mississippi.
September 12, 2006.
*986 Irving Conrad Mord, attorney for appellant.
Gene Horne, Centreville, attorney for appellee.
Before MYERS, P.J., IRVING, CHANDLER and ROBERTS, JJ.
CHANDLER, J., for the Court.
¶ 1. This boundary line dispute involves dueling claims for an approximately ten-acre parcel of land situated in Walthall County. The case commenced on July 8, 2002, when James Ford Harvey filed a complaint in the Chancery Court of Walthall County seeking to enjoin Dwight F. Wicker from trespassing upon Harvey's property. Harvey prayed for damages and also requested that the court establish the boundaries of the land at issue. On July 31, 2002, Wicker answered and moved to dismiss the complaint, asserting that he was a bona fide purchaser for value without notice.
¶ 2. At a hearing on January 19, 2005, both Harvey and Wicker sought to establish their ownership of the subject property. In a final judgment entered on February 7, 2005, the chancellor found that Harvey owned the property as the record title holder or, alternatively, through adverse possession. Wicker appeals, arguing that the chancellor's findings were based on an erroneous application of the law and were manifestly erroneous.
¶ 3. Finding no error, we affirm.

FACTS
¶ 4. The approximately ten acres at issue are situated south of Old Holmesville Road in the northwest quarter of the northwest quarter of Section 25, Township 3 North, Range 9 East in Walthall County. Old Holmesville Road runs east-west through the quarter-quarter section. North of Old Holmesville Road is Leatherwood Creek, which runs roughly east-west through the area. To the east of the quarter-quarter section, Old Holmesville Road intersects with Saint Paul Road. Near that intersection is the former site of Smyrna Church, which was torn down after 1951.
¶ 5. The chancellor found that the land at issue was part of a 426-acre parcel of timber land, the history of which is related below. On December 14, 1960, Edward Harvey by warranty deed conveyed the 426-acre parcel to Harvey's father, Melba L. Harvey, Sr. and Nathaniel Presley Chesnut. On March 26, 1973, Chesnut conveyed his undivided interest in the 426 acres to W.E. Parks Lumber Company, Inc. On April 13, 1973, W.E. Parks Lumber Company quitclaimed its interest in the parcel to Melba L. Harvey, Sr., who harvested timber from the property to finance the purchase. Melba L. Harvey, Sr. died on October 29, 1985, and his three children, James Ford Harvey, Melba L. Harvey, Jr., and Rosemary Harvey Jackson, acquired the parcel and other property by devise. On November 30, 1987, James, Melba, and Rosemary executed a timber deed conveying certain timber to Southern Lumber Company, Inc. The deed embraced the 426-acre parcel as well as other timber land.
¶ 6. On October 31, 1995, a final decree closing the estate of Melba L. Harvey, Sr. was recorded. The decree found the three children to be Melba L. Harvey, Sr.'s sole heirs and devisees, and declared them to be owners as equal tenants in common of *987 the 5,700 acres of land and mineral interests which Harvey, Sr. had owned in Mississippi at the time of his death. On April 22, 1998, the three children executed a deed of exchange whereby they divided and conveyed to each other various tracts of land. The parties conveyed the 426-acre parcel to James Harvey, the appellee. The deed of exchange was recorded in Walthall County on May 26, 1998.
¶ 7. All of the aforementioned documents were admitted into evidence. Each deed, save the timber deed, shows that the deed was recorded in the Deeds of Conveyance Records Book of Walthall County. Each deed contained the same legal description of the 426 acres. That legal description included the following property involved in this appeal: "all that part of north half of northwest quarter south of Tylertown-Holmesville public road, less that part south of Smyrna and Letherwood Creek gravel road, 32 acres, more or less, Section 25, Township 3 North, Range 9 East. . . ." Testimony at the hearing established that the Tylertown-Holmesville Public Road is the paved public road that is currently named Old Holmesville Road.
¶ 8. On January 20, 1936, Cleon Magee acquired the southwest quarter of the northwest quarter of Section 25, Township 3 North, Range 9 East. On August 28, 1943, Magee bought adjoining property from George and W.W. Vaught. The Vaughts conveyed to Magee:
All that part of the North West Quarter of North West Quarter (NW 1/4 of NW 1/4) Section 25, Township 3 North, Range 9 East that lying and being south of the Smyrna and Leather Wood Creek Gravel Road as said Road now runs through said forty, containing three acres, more or less.
The Magee purchases totaled approximately forty-three acres. On July 3, 1980, Cleon Magee's widow, Laurance O. Magee, executed an oil, gas, and mineral lease of the Magee property, including the above described property. All these conveyances were recorded. Wicker, the appellant, bought the Magee property from Laurance Magee on February 11, 2002. More concerning that purchase will be related below.
¶ 9. As written, the legal descriptions in the Harvey and Magee deeds appear to be harmonious. According to their language, Harvey owns certain property extending from the Tylertown-Holmesville (now Old Holmesville) Public Road south to the Smyrna and Leatherwood Creek Gravel Road, and Magee owned "three acres, more or less" south of the Smyrna and Leatherwood Creek Gravel Road. The deeds establish the Smyrna and Leatherwood Creek Gravel Road as the south boundary of the Harvey property and as the north boundary of the Magee property. Unfortunately, the Smyrna and Leatherwood Creek Gravel Road could not be located or its past existence confirmed, giving rise to this litigation.
¶ 10. In late 2001, Laurance Magee listed the Magee property for sale with real estate broker Doug Rushing; Alan Bridevaux was the listing agent. Bridevaux obtained the listing from Laurance Magee's attorney because Laurance was no longer handling her own affairs. Rushing placed an advertisement in a local newspaper representing that the Magee property consisted of fifty-one acres abutting Old Holmesville Road. Harvey saw the advertisement. Either Harvey or his business associate, William Bridges Netterville, notified Rushing that the Magee property did not abut Old Holmesville Road because Harvey owned land lying between Old Holmesville Road and the northern boundary of the Magee property. Harvey had leased this and other land to a hunting club. Rushing testified that a hunting club member told *988 him that an old road formed the southern boundary of the Harvey property. Rushing went upon the property three or four times, but never saw any evidence of an old road. He further testified that the tax assessment map showed that the Magee property extended all the way to Old Holmesville Road.
¶ 11. Rushing testified that, when Wicker became interested in buying the Magee property, he advised Wicker to obtain a survey due to the boundary line problem. Rushing arranged for Bracey Land Surveying to perform a survey of the Magee property and to determine whether the northern boundary of the Magee property was an old gravel road or was the Old Holmesville Public Road. This survey was paid for by Wicker. The Bracey survey indicated that the Magee property consisted of 52.922 acres abutting Old Holmesville Road.
¶ 12. Bracey Land Surveying was owned and operated by Ronald Bracey, a professional land surveyor. Ronald employed his son, Randy Bracey, to perform the field work for the survey. Randy Bracey was a land surveying intern. Randy was told to look for any evidence of an old gravel road lying south of Old Holmesville Road. Randy testified that he looked for the road, but found no evidence of it, nor did he see any painted lines demarcating a boundary line. Ronald Bracey reviewed the legal description of the Magee property, but did not review land records pertaining to adjoining property. Ronald admitted that the Magee deed called for only forty-three acres. He testified that, when no old road was found, he concluded that the Magee property extended all the way to Old Holmesville Road. After the survey, Netterville contacted Ronald and informed him that a red painted line marked the boundary between the Harvey and Magee properties. Netterville agreed to meet Ronald at the property to point out the line, but the two never accomplished the meeting.
¶ 13. Wicker bought the Magee property by warranty deed. The legal description in the deed was from the survey performed by Bracey Land Surveying. Wicker cleared trees from the disputed property. He placed a mobile home on the disputed property and built a driveway leading from Old Holmesville Road to the mobile home.
¶ 14. Harvey testified that the approximately ten acres at issue were part of the Harvey timber holdings, which were customarily marked with red painted lines. Harvey stated that, since the 1960s, a red painted line had marked the boundary between his property and the Magee property. Harvey paid taxes on the disputed property. For the past twenty years, the property had been leased to a hunting club. Arthur Crochet was a member of the club and testified that the club used the property almost every weekend during deer season and occasionally during the rest of the year. The club built deer stands on the property.
¶ 15. Netterville testified that he has done business with the Harvey family all of his life and was familiar with the disputed property. He stated that he performed an appraisal of the property in 1981; at that time, the red line was intact. He testified that Southern Lumber harvested timber from the property in 1987, and that more timber was cut in 1994. After the 1994 cut, the property was replanted in pine. Further, around 1987, Netterville observed timber being harvested on the Magee property; the harvesters had flagged the Harvey property along the red line and did not cut trees from the Harvey property. Netterville testified that he checked on the property from time to time and had painted or caused to be painted *989 the red line between the Magee and Harvey properties.
¶ 16. On the day of the hearing, the chancellor visited the property. The chancellor thoroughly related his observations in his opinion, a portion of which we quote:
The court personally observed the red line which began at the northwest corner of the property in question going south along the west line of the disputed area. The line then turned east at the southwest corner (marked by an old iron pipe with red paint on it which Mr. Wicker identified as being there prior to the survey) of the disputed area. The red line was consistently apparent along the south line of the disputed area with the exception of the area immediately around Mr. Wicker's home (it was obvious that this area had been cleared of some trees and Mr. Wicker testified that he did a lot of clearing and cleaning up in that area).
. . . .
The court also was able to notice that there were at least two different ages of red paint at various places along the red line on the south side of the disputed area.
. . . .
The court notes that on the west side of the property there was clear evidence of a timber difference between the property which is undisputedly the Magee property south of the red line and the property in dispute which is north of the red line. In other words, the timber observed by the court (especially on the west side of the tract in question) clearly showed a distinct difference along the red line which Mr. Harvey contends is his south line and the Magee (now Wicker) north line.
. . . .
Further, the court noticed that there was evidence of the tracks of a skidder, commonly used logging equipment, that led across a substantial part of the tract north of the red line but the skidder tracks ended at or very close to the red line (the tracks did not go south onto the Magee tract).
. . . .
The court was also able to observe that the timber on the land between the road and the red line (disputed area) had been cut over and in many areas there was young pine trees which were similar to pine plantation trees that Mr. Netterville testified had been planted back on a portion of the disputed area. Further, Mr. Crochet testified that for the twenty years he had leased the disputed area (together with other land) he had posted the land against trespassers. The signs observed by the court ran the entire length of the disputed area along the road frontage of Old Holmesville Road. The signs were of two different ages.
. . . .
In the order denying Wicker's motion to alter or amend the judgment, the chancellor stated that the red line consisted of paint on trees and blaze marks, as well as red painted corner stakes.
¶ 17. Wicker testified that he had not seen a red painted line on the property until visiting the property with the chancellor. He further testified that he had purchased the Magee property without notice of a title problem. He stated that he had not known until after he purchased the property of the possible existence of an old road or that his property might not extend to Old Holmesville Road.
¶ 18. The chancellor found that Harvey was the record title holder of the disputed property. Alternatively, the chancellor found that Harvey had acquired the property through adverse possession. We review those findings below.

*990 STANDARD OF REVIEW
¶ 19. This Court adheres to a limited standard of review of the decisions of a chancellor. Nichols v. Funderburk, 883 So.2d 554, 556(¶ 7) (Miss.2004). We will reverse only when the chancellor's determinations were manifestly wrong or clearly erroneous, or when the chancellor applied an incorrect legal standard. Id. If substantial evidence supports the chancellor's fact-findings, this Court must affirm. Id.

LAW AND ANALYSIS

I. DID THE CHANCERY COURT ABUSE ITS DISCRETION, APPLY AN ERRONEOUS LEGAL STANDARD, AND COMMIT MANIFEST ERROR IN FAILING TO SUSTAIN WICKER'S MOTION TO DISMISS THE COMPLAINT?
¶ 20. In the lower court, Wicker sought to establish that he was the record title holder of the disputed property. Wicker contended that the Smyrna and Leatherwood Creek Gravel Road and the Tylertown-Holmesville Public Road (now Old Holmesville Road) referenced in the Harvey and Magee deeds were one and the same road. Therefore, Wicker argued, he owned all of the property in the northwest quarter of the northwest quarter of Section 25 lying south of Old Holmesville Road. To support this argument, Wicker presented the testimony of George R. Brumfield and Nell Slipher, who were born in Walthall County in 1938 and had grown up in the relevant area. Brumfield and Slipher testified that the location of Old Holmesville Road had not changed in their lifetimes. Brumfield stated that he did not recall a gravel road lying south of Old Holmesville Road. Slipher testified that, when she was a child, the local roads did not have definite names. She testified that, back then, Old Holmesville Road was also known as Smyrna Road and Leatherwood Road, and that all three roads were one and the same. Doug Rushing testified that he was sixty-one years old and was raised a mile-and-a-half east of the disputed property. He had spent time on the disputed property as a child and did not recall a gravel road lying south of Old Holmesville Road.
¶ 21. The chancellor recognized that, even if the Tylertown-Holmesville Public Road and the Smyrna and Leatherwood Creek Gravel Road were one and the same road, the deeds could exist without overlap. This was because, under Harvey's deed to the north half of the northwest quarter south of the Tylertown-Holmesville Public Road (now Old Holmesville road), Harvey could hold title to any part of the northeast quarter of the northwest quarter south of the road and Wicker could own the northwest quarter of the northwest quarter south of the road. However, the chancellor rejected Wicker's one-road theory. The chancellor observed that both deeds were drafted by persons old enough at the relevant times to have been involved in the deed preparation process. Those drafters were obviously older than Brumfield, Slipher, and Rushing, each of whom was born around the time that the Magee deed was drafted in 1943. The court found that, despite the lack of present-day evidence of the Smyrna and Leatherwood Creek Gravel Road, the ancient documents of record were more reliable evidence of what actually existed at the times of the two deeds than the witness recollections. The chancellor further observed that the evidence was uncontradicted that the red painted line had marked the accepted boundary between the Harvey and Magee properties for more than forty years. The chancellor found that this was strong evidence that the red painted line represented the true common boundary line. Relying on the *991 above findings, the chancellor held that the red line represented the common boundary line between the Harvey and Wicker properties. The chancellor ordered a survey of the boundary line to be made and recorded in the land records of Walthall County.
¶ 22. Wicker argues that the chancellor was bound to accept the parol evidence provided by Brumfield, Slipher, and Rushing to the effect that the Smyrna and Leatherwood Creek Gravel Road was one and the same as the Tylertown-Holmesville Public Road (now Old Holmesville Road). An ambiguity in a contract "may arise from words which are uncertain when applied to the subject matter of the contract." I.P. Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 110(¶ 59) (Miss.1998). Deeds are construed in a manner similar to contracts. Martin v. Fly Timber Co., 825 So.2d 691, 696(¶ 11) (Miss.Ct.App.2002). Because the Smyrna and Leatherwood Creek Gravel Road was used as a monument in the deeds but could not be located, the deeds were ambiguous. Therefore, Wicker correctly argues that parol evidence was admissible to explain the ambiguity. I.P. Timberlands, 726 So.2d at 110(¶ 59).
¶ 23. However, the chancellor was not obligated to accept the evidence provided by Brumfield, Slipher, and Rushing and to ignore the other extrinsic evidence pertaining to the issue. "In Chancery Court, `the Chancellor is vested with the responsibility to hear the evidence, assess the credibility of the witnesses, and determine ultimately what weight and worth to afford any particular aspect of the proof.'" In re Boundaries of the City of Laurel, 922 So.2d 791, 795(¶ 7) (Miss. 2006) (quoting Rainey v. Rainey, 205 So.2d 514, 515 (Miss.1967)). The chancellor's credibility determination is a fact-finding and will not be disturbed unless it is manifestly wrong. Id. In this case, the chancellor did not manifestly err in weighing the testimony of Brumfield, Slipher, and Rushing and concluding that, due to the relative youth of these witnesses, they provided less credible evidence of the existence of the Smyrna and Leatherwood Creek Gravel Road than the fact that the drafters of both deeds had represented that the road existed.
¶ 24. Moreover, the chancellor's finding that the red painted line was the accepted boundary line between the two properties was supported by substantial evidence. Harvey testified that the line existed in the 1960s and Netterville testified that he had checked on the line in 1981 and thereafter. The chancellor observed that the line featured at least two ages of red paint. There was evidence that Magee had recognized the red line as the boundary because, during a Magee timber harvest, the harvesters flagged the red line and stopped cutting timber at the line. Conversely, during Harvey timber cuts, timber was harvested from Old Holmesville Road south to the red line. This evidence was supported by the chancellor's view of the property, which revealed that timber harvesting and planting activities were specific to each side of the red line.
¶ 25. Further, the chancellor correctly applied the law by finding that the historical acceptance of the red painted line as the boundary line was strong evidence that the red painted line was the true boundary line. "Acquiescence in a wrong boundary line will not establish it as the true line, but such acquiescence for a long period of time is evidence that such line is the true line." Hulbert v. Fayard, 230 Miss. 1, 10, 92 So.2d 247, 251 (1957). The court has also stated that, "recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient *992 length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line." York v. Haire, 236 Miss. 711, 716, 112 So.2d 245, 247 (1959). We find that the chancellor's decision that the red painted line constituted the actual common boundary line between Wicker's and Harvey's properties was supported by substantial evidence and was not manifestly erroneous.
¶ 26. As an affirmative defense to Harvey's trespass action, Wicker asserted in his motion to dismiss that he was a bona fide purchaser for value without notice. In finding for Harvey, the chancellor did not expressly address this issue. Respecting an issue in which the chancellor has made no specific finding, this Court assumes that the chancellor resolved such fact issue in favor of the appellee. Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983).
¶ 27. That a purchaser of real estate was a bona fide purchaser for value without notice is "an affirmative defense and must be sustained by competent proof." Memphis Hardwood Flooring Co. v. Daniel, 771 So.2d 924, 933(¶ 32) (Miss. 2000). The innocent purchaser must prove (1) a valuable consideration; (2) the presence of good faith; and (3) the absence of notice of the adverse interest. Id. It was undisputed that Wicker paid valuable consideration for the Magee property as it was described in the Bracey survey, and Wicker's warranty deed to that effect was admitted into evidence. Wicker contends that he bought the disputed property in good faith and without notice of Harvey's interest. We find that this contention is refuted by substantial evidence in the record that supports the chancellor's findings.
¶ 28. A prospective purchaser of real estate in Mississippi is charged with constructive notice of every statement of fact contained in the various conveyances constituting the chain of title. Bedford v. Kravis, 622 So.2d 291, 295 (Miss.1993). The Magee property was advertised for sale as abutting Old Holmesville Road. Wicker had constructive notice via the Magee deed that the northern boundary of the Magee property was a road called the Smyrna and Leatherwood Creek Road. Wicker may have thought this road was one and the same as Old Holmesville Road. However, Harvey told Rushing that he owned property between Old Holmesville Road and the Magee property and that the true boundary line was an old road. A hunter told Rushing that the property was under lease to the hunting club. Though Wicker denied having any knowledge of Harvey's claim before his purchase of the property, Rushing testified that he advised Wicker to get a survey because an old road, not Old Holmesville Road, might actually be the northern boundary of the Magee property. The credibility of Rushing's testimony about Wicker's knowledge was supported by the facts that Wicker obtained a survey of the property and the purpose of that survey was to discern the true boundary line. This was substantial evidence that Wicker knew of Harvey's adverse claim to the property before the purchase.
¶ 29. Moreover, as discussed below, the chancellor found that Harvey's use of the property met the elements of adverse possession. "Open and notorious possession of land under claim of title is sufficient to put subsequent purchasers on inquiry as to the possessor's rights therein." Beauchamp v. McLauchlin, 200 Miss. 83, 94, 25 So.2d 771, 775 (1946). Therefore, Harvey's possession of the property in a manner meeting the elements of adverse possession was notice to Wicker of Harvey's claim.
*993 ¶ 30. Anticipating the conclusion that he had notice, Wicker argues that his procurement of the survey was all that a reasonable person having notice of Harvey's claim would have done to satisfy himself that the Magee property abutted Old Holmesville Road.
[W]hen, in respect to a matter in which he has a material interest, a person has knowledge of such facts as to excite the attention of a reasonably prudent man and to put him upon guard and thus to incite him to inquiry, he is chargeable with notice, equivalent in law to knowledge, of all those further relevant facts which such inquiry, if pursued with reasonable diligence, would have disclosed.
Crawford v. Brown, 215 Miss. 489, 503, 61 So.2d 344, 350 (1952) (quoting First Nat'l Bank of Laurel v. Johnson, 177 Miss. 634, 643, 171 So. 11,14 (1936)). We find that there was substantial evidence that, although Wicker hired a surveyor to ascertain the true boundary line, Wicker's inquiry as to the true boundary line was not reasonably diligent and he is charged with the knowledge that a reasonably diligent investigation would have disclosed to him. Harvey's 1998 deed of exchange was recorded and indicated on its face that the Smyrna and Leatherwood Creek Road was south of the Tylertown-Holmesville Public Road (now Old Holmesville Road), not one and the same as Old Holmesville Road. Neither Wicker nor surveyor Ronald Bracey reviewed Harvey's deed. Given the fact that Harvey claimed ownership of property between Old Holmesville Road and an old road and the fact that the Bracey survey added approximately ten acres to the amount of acreage represented by the Magee deed, a reasonably diligent inquiry would have included a review of Harvey's record title. And, the chancellor's description of the red painted line, posted signs, timber activities, and other indicia of Harvey's possession support the conclusion that these indicia would have been observed in the exercise of reasonable diligence. We affirm the chancellor's implicit finding that Wicker was not a bona fide purchaser for value without notice.
¶ 31. We affirm the chancellor's finding that Harvey owned the disputed property as the record title holder and free and clear of any claims by Wicker. Notwithstanding this holding, we discuss the chancellor's alternative finding that Harvey had acquired the disputed property from Magee through adverse possession. We conclude that the finding was supported by substantial evidence.
¶ 32. To establish an adverse possession claim, the party claiming adverse possession must show six elements by clear and convincing evidence. Blackburn v. Wong, 904 So.2d 134, 136(¶ 15) (Miss.2004). "[F]or possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." Id. A period of adverse possession may be tacked to that of a predecessor in title if there is privity of contract. Crowder v. Neal, 100 Miss. 730, 736, 57 So. 1, 3 (1911).

(1) Under claim of ownership
¶ 33. As found by the chancellor, Harvey and his predecessors in title had claimed exclusive ownership of the disputed property for a period well in excess of the ten-year statutory period for adverse possession. Miss.Code Ann. § 15-1-13(1) (Rev.2003).

(2) Actual or hostile
¶ 34. Actual possession has been defined as "effective control over a definite area of land, evidenced by things visible to *994 the eye or perceptible to the senses." Blankinship v. Payton, 605 So.2d 817, 819-20 (Miss.1992). Possession is hostile and adverse when the adverse possessor intends to claim title notwithstanding that the claim is made under a mistaken belief that the land is within the calls of the possessor's deed. Alexander v. Hyland, 214 Miss. 348, 357, 58 So.2d 826, 829 (1952). The chancellor recognized that Harvey's painting of lines, putting down steel markers, posting the property, leasing the property, managing the timber on the property, and placing deer stands on the property all were acts of possession. And, Harvey's possession was hostile because he claimed title to the property with the belief it was embraced by the legal description in his deed.

(3) Open, notorious, and visible
¶ 35. Mere possession does not satisfy the requirement that possession be open, notorious, and visible. Craft v. Thompson, 405 So.2d 128, 130 (Miss.1981). Rather, an adverse possessor "must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest." Blankinship, 605 So.2d at 820. The chancellor found that Harvey's possessory acts were sufficiently open, notorious, and visible to announce Harvey's claim to the world. In so holding, the chancellor relied upon the following authority:
[B]oth the quality and quantity of possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land. Adverse possession of "wild" or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands. The question in the end is whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder upon notice that the lands are held under an adverse claim of ownership.
Lynn v. Soterra, Inc., 802 So.2d 162, 167(¶ 17) (Miss.Ct.App.2001) (quoting Rawls v. Parker, 602 So.2d 1164, 1168 (Miss.1992)).
¶ 36. In his argument, Wicker considers each possessory act by Harvey in isolation and posits why each act, on its own, was insufficient to establish the open, notorious, and visible element. However, the chancellor's decision was based upon the totality of Harvey's possessory acts. The chancellor found that Harvey's painting of lines, putting down steel markers, posting the property, leasing the property, managing the timber on the property, and placing deer stands on the property "clearly qualified as open, notorious, and visible" such that anyone having a claim of ownership of the property would have seen, without doubt, that Harvey was "flying his flag" over the property.
¶ 37. Given that the property at issue consisted of unimproved timber land, the chancellor did not manifestly err in finding that Harvey's activities sufficed to "fly his flag of ownership" on the property. In Kayser v. Dixon, 309 So.2d 526, 529 (Miss. 1975) (quoting McCaughn v. Young, 85 Miss. 277, 292, 37 So. 839, 842 (1905)), involving adverse possession of timber land, the court stated that an important question is whether the claimant exercises the "same character of control" that he would apply toward property that was actually his, and which he would not apply toward property that he did not own. In Jackson v. Peoples Bank & Trust Co., 869 So.2d 422, 424(¶ 8) (Miss.Ct.App.2004), this Court found that an adverse claimant exercised such control over timber lands by *995 maintaining an orange painted boundary line for over forty years, by regularly inspecting the property for insect and beaver infestation, and by cutting timber on the property. As in the case sub judice, the adverse claimant maintained the disputed property in the same manner as his other timber holdings. We found that these acts of control were sufficient for a finding of adverse possession. Id. at 425(¶ 10). The chancellor's finding in the instant case was consistent with our holding in Jackson.
¶ 38. We observe that, in addition to those acts recited above, Harvey paid taxes on the property. "Payment of taxes . . . is very important and strong evidence of a claim of title . . . ." McCaughn, 85 Miss. at 293, 37 So. at 842 (quoting Holtzman v. Douglas, 168 U.S. 278, 284, 18 S.Ct. 65, 42 L.Ed. 466 (1897)). And, as recognized by the chancellor, neither Magee nor anyone else ever disputed Harvey's ownership of the property until Wicker became interested in purchasing it. The evidence was undisputed that Magee had recognized the red painted line as the boundary between the two properties. "A possession which is adverse and actually known to the true owner is equivalent to a possession which is open and notorious and adverse." Id. at 294, 37 So. at 842.

(4) Continuous and uninterrupted for a period of ten years
¶ 39. The chancellor found that Harvey's possession of the property was continuous and without interruption from at least 1980 until 2001, when Rushing began showing the property. There was no evidence in the record to refute this finding.

(5) Exclusive
¶ 40. Exclusive possession evinces "an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising dominion of a sole owner." Rawls v. Parker, 602 So.2d 1164, 1169 (Miss.1992). All of the evidence showed that Harvey had this intention. Harvey's ownership of the property was challenged for the first time when the property was listed for sale by Rushing. When Harvey discovered that the property was being advertised for sale, he responded immediately and asserted his claim of ownership. As recognized by the chancellor, there was no evidence that Harvey's possession was less than exclusive.

(6) Peaceful
¶ 41. The evidence was undisputed that Harvey and his predecessors in title peacefully possessed the property for a period exceeding ten years. No party contested Harvey's ownership of the property until Rushing listed it for sale.
¶ 42. In conclusion, we affirm the decision of the chancellor that Harvey is the record title holder of the disputed property. Notwithstanding our holding, we find that the chancellor relied upon substantial evidence in finding that Harvey proved the elements of adverse possession by clear and convincing evidence.
¶ 43. THE JUDGMENT OF THE CHANCERY COURT OF WALTHALL COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.