LEE, C.J., FOR THE COURT:
 

 ¶ 1. In this case, we must determine whether the chancellor erred in voiding a tax sale and in finding that the tax-sale purchaser did not acquire the subject property by adverse possession. Additionally, we must determine if statutory damages were properly awarded to the tax-sale purchaser. Finding error regarding the chancellor's calculation of the statutory damages, we affirm in part and reverse and remand in part.
 

 PROCEDURAL HISTORY
 

 ¶ 2. In July 2014, Eddie Orcutt filed a complaint in the Jefferson County Chancery Court to quiet and confirm tax title in a particular piece of property located in Jefferson County. Orcutt and Savy Kerageorgiou had purchased the subject property at a tax sale on August 30, 1993. The Jefferson County Chancery Clerk issued a tax deed to Orcutt and Kerageorgiou on September 26, 1995. The tax deed indicated the taxes had been assessed to the "Henry Chambliss Estate." Kerageorgiou later conveyed his interest in the property to Orcutt, leaving Orcutt the sole owner of the property, consisting of approximately twenty acres.
 

 ¶ 3. Charlie Chambliss responded to Orcutt's complaint, claiming that he never received notice of the tax sale and, alternatively, he acquired the property by adverse possession. After a trial, the chancellor determined that Chambliss never received notice of the tax sale; thus, the tax sale was void. The chancellor further found that Orcutt had failed to prove ownership of the land by adverse possession. However, the chancellor did award Orcutt statutory damages totaling $5,151.56.
 

 ¶ 4. Orcutt now appeals, asserting that (1) the tax sale was not void; (2) he proved adverse possession by clear and convincing evidence; (3) the chancellor erred in calculating the statutory damages; and (4) he should be reimbursed for work performed on the subject property.
 

 FACTS
 

 ¶ 5. The property in question is a part of a larger tract of land (seventy-four acres) in Jefferson County, originally belonging to Henry Chambliss, who died in the 1940s. The land is repeatedly referred to
 as "The Henry Chambliss Estate" (the Estate). Over the years, the property was divided. At the time of trial, Orcutt and his wife owned the west thirty acres (Parcel 1).
 
 [1]
 
 Little Tree Lumber Company bought the east twenty-five acres from Chambliss in 1981 (Parcel 3). The middle twenty acres is the property at issue (Parcel 2). Chambliss contends he received title to the remainder of the Estate (less the thirty acres in Parcel 1) in 1977 from his uncle, Milton Goudy. Goudy had received his interest in the land from his wife, Everlena Chambliss Goudy, who was an heir of Henry.
 
 [2]
 

 ¶ 6. The record contains a warranty deed dated October 22, 1977, stating, in part:
 

 I, the undersigned, MILTON GOUDY, do hereby sell, convey and warrant unto CHARLIE R. CHAMBLISS all of my undivided interest, supposed to be one-half (1/2), in the following described land and property located and situated in Jefferson County, Mississippi, to-wit:
 

 The North half (N 1/2) of the Northwest Quarter (NW 1/4) of Section Twenty-six (26), Township Ten (10) North, Range Three (3) East, less and except the West 30 acres thereof sold to James Townsend, et ux, by deed recorded Book 5-T, page 110 of the land records of Jefferson County, Mississippi.
 

 The said Milton Goudy is the sole and only heir at law of Everlena Chambliss Goudy, who died in 1975. The said Everlena Chambliss Goudy inherited her interest in said land from her father, Henry Chambliss, who got the property by deed recorded Book V, page 582 of the land deed records of Jefferson County, Mississippi.
 

 The deed was recorded on November 17, 1977. We note that in 1978, Chambliss deeded his interest in the property (less Parcel 1) to Rosetta Watts, Chambliss's relative. In 1981, Watts deeded the same property back to Chambliss prior to the sale of Parcel 3 to Little Tree Lumber.
 

 ¶ 7. The testimony regarding proof of adverse possession will be discussed in issue II.
 

 DISCUSSION
 

 I. Tax Sale
 

 ¶ 8. We first note that the dissent contends the chancellor improperly handled Chambliss's motion for an involuntary dismissal. However, Orcutt did not raise this issue in posttrial motions or in his appellate brief; thus, this issue is procedurally barred.
 
 See
 

 J.N.W.E. v. W.D.W.
 
 ,
 
 922 So.2d 12
 
 , 20 (¶ 31) (Miss. Ct. App. 2005).
 

 ¶ 9. Orcutt argues that the tax sale was not void because Chambliss admitted he did not own the property in question. After issuing a judgment finding that the tax sale was void and that neither party had proved adverse possession, the chancellor requested additional briefing regarding statutory damages. In his brief, Chambliss stated he was not liable to Orcutt for
 statutory damages because he "has no interest in the disputed property." Orcutt relies upon this statement to contend that the chancellor erred in voiding the tax sale. However, the chancellor disregarded this assertion, noting that Chambliss had testified under oath during trial that he was the owner of the property in question and received his interest in the property from Goudy.
 

 ¶ 10. In regard to the tax sale, we agree with the chancellor that the tax sale was void for failure to give proper notice. "When property is sold for unpaid county or municipal ad valorem taxes, the property owner must be given notice of his right to redeem the property within 180 days of, but no less than 60 days prior to, the expiration of the redemption period."
 
 DeWeese Nelson Realty Inc. v. Equity Servs. Co.
 
 ,
 
 502 So.2d 310
 
 , 311 (Miss. 1986). The statute governing the owner's right to notice of redemption is Mississippi Code Annotated section 27-43-3 (Rev. 2010), which states that if the reputed owner of the property is a resident of Mississippi, the chancery clerk must give notice by registered or certified mail to the owner's usual physical or mailing address, personal notice in the same manner as in Mississippi Rule of Civil Procedure 4(d)(1), and publication in the county where the land is located. "Statutes dealing with land forfeitures for delinquent taxes should be strictly construed in favor of the landowners."
 
 Viking Invs. LLC v. Addison Body Shop Inc.
 
 ,
 
 931 So.2d 679
 
 , 681 (¶ 7) (Miss. Ct. App. 2006). "Any deviation from the statutorily mandated procedure renders the sale void."
 

 Id.
 

 ¶ 11. As previously stated, the record indicates the taxes had always been assessed to the Estate, even after Chambliss became record owner. According to Chambliss, the neighboring landowners had offered to pay the property taxes in exchange for allowing their cows to graze on the land in question. The notice of the tax sale was published three times in the county where the land was located: on August 19, 1993; August 18, 1994; and August 17, 1995. The listing states the property, specifically parcel number 0202-26-002, was to be sold due to delinquent taxes.
 

 ¶ 12. Other than the publication, the chancellor noted that Orcutt did not offer any proof that the other requirements of section 27-43-3 were followed. There was no evidence regarding the chancery clerk's requirements for notice, and there was no evidence that personal service was attempted under Rule 4(d)(1).
 

 ¶ 13. The record contains two documents titled "Notice of Forfeiture." Both are directed to the Estate at an address in Jackson, Mississippi, and both refer to parcel number 0202-26-002. One states that the property was sold on August 28, 1994,
 

 to [the] State of Mississippi for the county taxes of 1993, and that the title to said land will become absolute in [the] State of Mississippi unless redemption from said tax sale be made on or before [August 15, 1996]. Your taxes are behind, the third year of delinquency is August 1996.
 

 This document is not signed by the chancery clerk as required. The other document states the property was sold on September 28, 1995, "to Kerageorgiou and Orcutt for the county taxes of 1994, and that the title to said land will become absolute in Kerageorgiou and Orcutt unless redemption from said tax sale be made on or before" August 31, 1997. The document is signed and dated February 14, 1997. However, the record includes receipts for payment of taxes for both 1993 and 1994 by Orcutt and Kerageorgiou. The chancellor determined that these notices were not mailed to Chambliss and were not related to the August 30, 1993 tax sale
 for the unpaid 1992 taxes. The chancellor stated that "no one from the [clerk's office] testified in an attempt to prove that proper notice was actually mailed to anyone relating to this property." The chancellor also held that it was undisputed that Chambliss was the record owner and had not received notice of the sale.
 

 ¶ 14. We agree with the chancellor that the tax sale was void for lack of notice. Next, we must determine whether Orcutt proved ownership of the property by adverse possession.
 

 II. Adverse Possession
 

 ¶ 15. Orcutt claims that if we find the tax sale void, then he gained title to the property by adverse possession. Mississippi Code Annotated section 15-1-13(1) (Rev. 2012) defines adverse possession as follows:
 

 Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full complete title ....
 

 We apply a six-part test for determining whether adverse possession has occurred: "for possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful."
 
 Walker v. Murphree
 
 ,
 
 722 So.2d 1277
 
 , 1281 (¶ 16) (Miss. Ct. App. 1998). The burden was on Orcutt to prove each element by clear and convincing evidence.
 
 Ellison v. Meek
 
 ,
 
 820 So.2d 730
 
 , 734 (¶ 13) (Miss. Ct. App. 2002).
 

 ¶ 16. A finding that the proof was sufficient to sustain a claim of adverse possession is a fact-finding that requires our application of the substantial-evidence/manifest-error test.
 
 Walker
 
 ,
 
 722 So.2d at 1280
 
 (¶ 15). If substantial evidence supports the chancellor's fact-findings, this Court must affirm, even though we "might have found otherwise as an original matter."
 
 Nichols v. Funderburk
 
 ,
 
 883 So.2d 554
 
 , 556 (¶ 7) (Miss. 2004).
 

 ¶ 17. Orcutt contends that the chancellor properly classified the property as "wild lands"; thus, he argues that the proof necessary to establish adverse possession is less than if the property had been improved or developed. "Possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land," and "adverse possession of 'wild' or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands."
 
 Walker
 
 ,
 
 722 So.2d at 1281
 
 (¶ 16). The chancellor determined that the land was wild because no one actually lived on the property during the period in question and "all actions claimed or described by any party or other witnesses were of a recreational nature that is more consistent with wild land." However, there was testimony that an empty house formerly occupied by previous landowners was located on the property, indicating that the land was not unimproved.
 

 ¶ 18. Orcutt further relies upon Mississippi Code Annotated section 15-1-15 (Rev. 2012) for support, which states:
 

 Actual occupation for three years, after two years from the day of sale of land held under a conveyance by a tax collector in pursuance of a sale for taxes, shall bar any suit to recover such land or assail such title because of any defect in the sale of the land for taxes, or in any precedent step to the sale, saving to
 minors and persons of unsound mind the right to bring suit within such time, after the removal of their disabilities, and upon the same terms as is provided for the redemption of land by such persons.
 

 The supreme court in
 
 Bowser v. Tootle
 
 ,
 
 556 So.2d 1373
 
 , 1375 (Miss. 1990), stated,
 

 We do not understand actual occupancy to mean that one must reside personally upon the property[,] but we do understand it to mean possession over the three[-]year period which is of such a nature, throughout the three[-]year period, that another, believing himself or herself to be the owner of the property, would recognize that someone else was asserting a claim to it because of a clearly visible indicia of occupancy on the property.
 

 The chancellor determined that section 15-1-15 was inapplicable to wild lands since there was no "actual occupation" during this time, citing
 
 Waldrop v. Whittington
 
 ,
 
 213 Miss. 567
 
 , 573,
 
 57 So.2d 298
 
 , 300 (1952). In
 
 Waldrop
 
 , the supreme court determined that the statute "applies only where there is 'actual occupation' under the tax title, and in this case it appears ... the land in question is wild land and has never been actually occupied by anyone. Consequently ... the only bar to this suit by limitation would be our ten-year statute...."
 

 Id.
 

 Based upon this, the chancellor applied the ten-year limitation period.
 

 ¶ 19. The chancellor made detailed findings in regard to each element, ultimately finding that Orcutt did not prove adverse possession by clear and convincing evidence.
 

 1. Claim of Ownership
 

 ¶ 20. To stake a claim of ownership, the possessor must "fly [his] flag over the property" in such a way as to put the actual owner on notice that the property is "being held under an adverse claim of ownership."
 
 Apperson v. White
 
 ,
 
 950 So.2d 1113
 
 , 1117 (¶ 7) (Miss. Ct. App. 2007). The quality, not the quantity, of acts must be considered.
 

 Id.
 

 at (¶ 8). The chancellor found that Orcutt satisfied this element due to his payment of taxes on the property since the tax sale, and the existence of recorded deeds since the tax sale, reference Orcutt's ownership. We find substantial evidence supports the chancellor's decision.
 

 2. Actual or Hostile
 

 ¶ 21. In regard to the actual-or-hostile element, "[t]he actual or hostile occupation of land necessary to constitute adverse possession requires a corporeal occupation, accompanied by a manifest intention to hold and continue to hold the property against the claim of all other persons, and adverse to the rights of the true owner."
 
 Hill v. Johnson
 
 ,
 
 27 So.3d 426
 
 , 431 (¶ 23) (Miss. Ct. App. 2009). The chancellor determined that the evidence was not clear and convincing regarding this element, and we agree. The chancellor stated that although Orcutt "testified (over a sustained hearsay objection) about someone else running off trespassers, there was no testimony that the property was posted in any way to warn others that they were trespassing." The chancellor noted that "there was very little evidence of any acts to control the use of the subject property. There was no testimony, for example, of any fencing of the property and/or locking of gates by Mr. Orcutt or on his behalf."
 

 3. Open, Notorious, and Visible
 

 ¶ 22. For possession to be open, notorious, and visible, the possessor "must unfurl his flag on the land, and keep it flying, so that the actual owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of
 conquest."
 
 Roberts v. Young's Creek Inv. Inc.
 
 ,
 
 118 So.3d 665
 
 , 670 (¶ 13) (Miss. Ct. App. 2013) (quoting
 
 Wicker v. Harvey
 
 ,
 
 937 So.2d 983
 
 , 994 (¶ 35) (Miss. Ct. App. 2006) ). "The mere possession of land is not sufficient to satisfy the requirement that the adverse possessor's use be open, notorious, and visible."
 
 Webb v. Drewrey
 
 ,
 
 4 So.3d 1078
 
 , 1083 (¶ 19) (Miss. Ct. App. 2009) (citation omitted). An adverse-possession claim will not begin "unless the landowner has actual or constructive knowledge that there is an adverse claim against his property."
 

 Id.
 

 ¶ 23. The chancellor considered the testimony of the county appraiser, Kenneth Peoples, to be credible in regard to this element. Peoples testified that he visited the property every year, usually in April, for work. According to Peoples, he saw no noticeable changes to the property from year to year.
 

 ¶ 24. Orcutt testified that he first began hunting on the property in 1996, after the two-year redemption period ended. Orcutt stated that he fixed the road and planted two food plots in addition to installing deer stands. Much of Orcutt's testimony is not specific as to when these improvements occurred. Orcutt said he allowed other family and friends to hunt on the land over the years. Other than these people and one person who was lost, Orcutt stated he never saw anyone else on the land in all of the years he owned the property. In contrast, Chambliss also testified that he used the property regularly to hunt and allowed friends and family to do so as well. Chambliss also testified that he planted food plots, fixed the road, and installed deer stands on the property. Like Orcutt, Chambliss stated he never saw anyone other than his friends or family use the land.
 

 ¶ 25. The chancellor stated that "even if the food plots and hunting stands were actually seen by Chambliss, there is not evidence that it was to an extent that it should have reasonably put [Chambliss] on notice ... as opposed to a trespasser simply hunting on land thought to be unattended."
 

 ¶ 26. The chancellor did note that a survey of the property was conducted in 2014 at the request of someone wanting to buy the twenty-acres and the adjoining thirty-acre tract. Chambliss saw the surveyors and asked them to leave his property. Around this time, Chambliss also saw a "for sale" sign on the property and contacted an attorney representing the seller and advised them he owned the property. The chancellor recognized that these occurrences were enough to put Chambliss on notice, but did not benefit Orcutt because they occurred in 2014. We find substantial evidence supports the chancellor's findings.
 

 4. Continuous and Uninterrupted for a Period of Ten Years
 

 ¶ 27. Adverse possession requires continuous and uninterrupted possession of a disputed property for at least ten years.
 
 Miss. Code Ann. § 15-1-13
 
 (1). The chancellor found Orcutt proved this element, and we agree.
 

 5. Exclusive
 

 ¶ 28. "Exclusive possession means that the possessor 'evinces an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising the dominion of a sole owner.' "
 
 Roberts
 
 ,
 
 118 So.3d at 671
 
 (¶ 15) (quoting
 
 Wicker
 
 ,
 
 937 So.2d at 995
 
 (¶ 40) ). Exclusive possession "does not mean that no one else can use the property."
 

 Id.
 

 (citation omitted). As previously stated, both Orcutt and Chambliss claimed to have been on the property regularly either hunting, maintaining
 food plots, fixing the road, and installing deer stands. The chancellor recognized that much of the testimony regarding the activities by both sides was somewhat confusing regarding the property lines, as well as the location of the road, a pond, the food plots, and the deer stands. The chancellor found that Orcutt did not prove this element, and we agree.
 

 6. Peaceful
 

 ¶ 29. The chancellor found that no evidence was presented to suggest any breach of the peace between Orcutt and Chambliss; thus, the peaceful element was "sufficiently satisfied." However, we would disagree with the chancellor's findings since it was Orcutt's duty to prove this element by clear and convincing evidence.
 

 ¶ 30. Ultimately, the chancellor concluded that the quality of the acts was more important than the quantity.
 
 See
 

 Walker
 
 ,
 
 722 So.2d at 1282
 
 (¶ 19) ("The chancery court's findings of fact correctly made an analysis of the quality of evidence presented at trial, as opposed to the mere quantity of the evidence." (emphasis omitted)). In determining that Orcutt failed to meet his burden by clear and convincing evidence, the chancellor stated Orcutt's actions were not "open and visible enough to 'fly his flag' and the proof was not clear and convincing regarding some of those facts specifically addressed." As previously stated, the chancellor made detailed findings regarding Orcutt's adverse-possession claim. We find substantial evidence supports his findings. This issue is without merit.
 

 III. Statutory Damages
 

 ¶ 31. Orcutt argues that he was entitled to reimbursement of taxes plus interest from 1996-2015, not just from 1992-1995 as the chancellor found.
 

 ¶ 32. At the time of the tax sale in 1993, Mississippi Code Annotated section 27-45-3 stated that the amount required for redemption included
 

 the amount of all taxes for which the land was sold, with all costs incident to the sale, and five percentum damages on the amount of taxes for which the land was sold, and interest on all such taxes and costs at the rate of one percentum per month, or any fractional part thereof, from the date of such sale and
 
 all taxes and costs that have accrued on the land since the sale
 
 , with interest thereon from the date such taxes shall have accrued, at the rate of one percentum per month, or any fractional part thereof ....
 

 (Emphasis added). An amendment, effective March 27, 1995, eliminated the word "taxes" from the italicized phrase, changing the phrase to "all costs that have accrued on the land since the sale." The amendment also changed the one-percent interest rate to one-and-a-half percent.
 

 ¶ 33. The chancellor also relied upon Mississippi Code Annotated section 27-45-27(1). Section 27-45-27(1) recognizes that a tax-sale purchaser retains a lien on the property in the event the tax sale is declared illegal on some other ground. At the time of the tax sale in 1993, section 27-45-27(1) stated in part:
 

 The amount paid by the purchaser of land at any tax sale thereof for taxes, either state and county, levee or municipal, and five percentum on said amount, and interest on the amount paid by the purchaser at the rate of one percent per month, or any fractional part thereof, and all expenses of the sale and registration, and all sums paid for taxes on the land after its sale and purchase, and interest thereon at the rate of one percentum per month, or any fractional part thereof shall be a lien on the land in favor of the purchaser and the holder of the legal title under him, by descent or
 purchase, if the taxes for which the land was sold were due, although the sale was illegal on some other ground.
 

 The amendments, effective March 27, 1995, eliminated the five-percent assessment and increased the interest owed to one-and-one-half percent per month.
 

 ¶ 34. The chancellor found as follows:
 

 This court will rule conservatively. This court finds that the version of the statutes in effect at the time of each tax sale applies. For the August 30, 1993 tax sale, section 27-45-3 provided that the redemption amount include taxes accrued on the land since the sale. This court could make the argument that Orcutt is entitled to all subsequent taxes paid, plus interest. However, there was an intervening tax sale on April 1, 1996, for tax year 1995. This sale was conducted after the March 27, 1995 amendments. Orcutt is charged with knowledge of the existing statutes which would include the amendments. Since the amended statutes do not include the subsequent taxes paid, Orcutt is not entitled to those amounts.
 

 Therefore, this Court finds that the redemption amount for the August 30, 1993 tax sale includes the taxes paid for years 1992, 1993, and 1994. The redemption amount for the April 1, 1996 tax sale includes the taxes Orcutt paid for tax year 1995. Computation of interest will be discussed below. Orcutt is, therefore, not entitled to repayment of the taxes he paid for tax years 1996 through 2014 and he is not entitled to interest on those amounts.
 

 The chancellor noted that "none of the authority addresses the situation in today's case where a tax deed is found to be void twenty years after it was issued and the tax purchaser has dutifully and timely paid taxes on the property since the sale." Following the earlier version of the statutes, the chancellor then calculated the amount owed for tax years 1992, 1993, and 1994, including interest. Following the amended version of the statutes, the chancellor then calculated the amount owed for tax year 1995, including interest. The total amount with penalties and interest was $5,151.56.
 

 ¶ 35. We disagree with the chancellor's findings. The chancellor erroneously calculated the statutory damages based upon compound interest, and erroneously limited the damages to tax years 1992, 1993, and 1994. As noted above, the statutes do not explicitly authorize compound interest. "The general rule is that 'when interest is allowable, it is to be computed on a simple rather than compound basis in the absence of express authorization otherwise.' "
 
 Exxon Corp. v. Crosby-Miss. Res. Ltd.
 
 ,
 
 40 F.3d 1474
 
 , 1489 (5th Cir. 1995) (citing
 
 Stovall v. Ill. Cent. Gulf R.R.
 
 ,
 
 722 F.2d 190
 
 , 192 (5th Cir. 1984) ). Therefore, we reverse and remand in part for the chancellor to recalculate the amount of statutory damages-based upon simple interest-on all of the taxes Orcutt has paid since the tax sale in 1993.
 

 IV. Reimbursement for Work
 

 ¶ 36. Orcutt claims he is entitled to reimbursement for the improvements he made on the property over the years. In his additional briefing before the chancellor regarding statutory damages, Orcutt stated that he spent $15,689.89 on creating and maintaining the two food plots. However, the chancellor had limited the additional briefing to evidence in the trial record, and Orcutt did not offer any proof regarding the amount of his improvements during trial. Thus, the chancellor denied Orcutt relief. We find no abuse of discretion.
 

 ¶ 37.
 
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 

 IRVING, P.J., CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. GRIFFIS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON AND TINDELL, JJ.; BARNES, J., JOINS IN PART.
 

 Orcutt and his wife bought the land in 2008 from Tower Loan of Mississippi Inc.
 

 James Chambliss, Charlie Chambliss's father, was originally considered another heir of Henry. In fact, Everlena and James, along with both spouses, conveyed Parcel 1 to James Townsend and his wife in 1974. This deed stated Everlena and James were the only heirs of Henry. However, in a partition suit brought by Chambliss regarding the property, the chancellor dismissed the suit, finding that James was not Henry's son and heir; thus, Chambliss had no interest in the property by way of Henry. In his testimony, Chambliss refers to Everlena as "Mary Evelyn Chambliss Goudy."