# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00693-COA

**MARVIN OTIS KING**                                                    **APPELLANT**

**v.**

**LINDA DURR**                                                              **APPELLEE**

DATE OF JUDGMENT:                06/09/2022
TRIAL JUDGE:                          HON. DAVID SHOEMAKE
COURT FROM WHICH APPEALED:   SIMPSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        ROBERT WENDELL JAMES
ATTORNEY FOR APPELLEE:         JAMES BURVON SYKES III
NATURE OF THE CASE:              CIVIL - REAL PROPERTY
DISPOSITION:                        AFFIRMED - 10/24/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     Marvin King filed a complaint in the Simpson County Chancery Court against his sister, Linda Durr, and asserted a claim of adverse possession of forty acres of land located in Simpson County, Mississippi. Linda answered the complaint and filed a counter-claim in which she asked the chancellor to confirm her title to the forty acres. After finding that Marvin had failed to meet his burden of proof for adverse possession, the chancellor entered a final judgment in favor of Linda. Upon review of Marvin's appeal from the chancellor's judgment, we find no error and affirm.

## FACTS

¶2.     Eddie and Lillie King, the parties' parents, owned several tracts of land that were

either adjoined or in the general vicinity of the subject real property. In 1949, the forty acres at issue were initially conveyed to Eddie. In 1963, Eddie and Lillie executed a warranty deed that conveyed the forty acres to themselves as "an estate by the entirety with full rights of survivorship."

¶3. Without Lillie's accompanying signature, Eddie executed a special warranty deed in 1990 to convey the forty acres to Marvin.[1] Eddie died in 1994. In 2008, Lillie signed her last will and testament in which she devised and bequeathed "the rest and residue" of her real and personal property to Linda. Lillie died on April 9, 2012, and the following month, her will was admitted to probate.

¶4. In 2021, Marvin performed a title search on the subject property as part of his preparations to sell the land. Only then did Marvin discover that the forty acres did not legally belong to him. As a result, on March 29, 2021, Marvin filed a complaint against Linda and sought title to the forty acres by adverse possession. On April 12, 2021, Linda answered the complaint. She also filed a counter-claim in which she disputed Marvin's claim of adverse possession and requested that the chancellor confirm her title to the forty acres.

¶5. After a hearing, the chancellor entered a final judgment on June 9, 2022. Neither party disputed that the 1990 deed in which Eddie had conveyed the forty acres to Marvin was void due to the absence of Lillie's signature. As a result, the chancellor concluded not only that Lillie still owned the forty acres at the time of her death but also that her devise of "the rest and residue" of her real property to Linda had included the forty acres. The chancellor

_____

[1] On appeal, Marvin does not dispute that the 1990 deed conveying the forty acres to him was void due to the absence of Lillie's signature.

2

found that both Linda and Marvin had testified to Lillie's competency before her death in 2012 and that Marvin had even stated his mother had "a good mindset." Because Marvin had acknowledged that his only claim of ownership to the land was through adverse possession, the chancellor considered whether Marvin had sufficiently proved the elements of adverse possession.

¶6. To succeed on his adverse-possession claim, Marvin was required to prove each statutory element by clear and convincing evidence. *Franco v. Ferrill*, 342 So. 3d 1176, 1188 (¶29) (Miss. Ct. App. 2022). The chancellor found, however, that Marvin had failed to meet his burden of proof for any of the required elements. The chancellor therefore did not confirm Marvin's alleged title by adverse possession and, instead, confirmed Linda's title to the forty acres. Marvin filed a motion for reconsideration as well as an amended motion for judgment notwithstanding the judgment or, alternatively, a new trial. Aggrieved by the chancellor's final judgment and denial of his post-trial motions, Marvin appeals.

**STANDARD OF REVIEW**

¶7. "This Court 'will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.'" *Green v. Poirrier Props. LLC*, 344 So. 3d 318, 324 (¶16) (Miss. Ct. App. 2022) (quoting *Okoloise v. Yost*, 283 So. 3d 49, 54 (¶22) (Miss. 2019)). "Further, this Court 'will not reverse a chancellor's findings'" when they are supported by substantial evidence. *Id.* (quoting *Okoloise*, 283 So. 3d at 54 (¶22)). The appellate courts review questions of law de novo. *Crotwell v. T & W Homes*, 318 So. 3d 1117, 1121 (¶11) (Miss. 2021).

3

**DISCUSSION**

¶8. Mississippi Code Annotated section 15-1-13(1) (Rev. 2019) defines adverse possession as follows:

> Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title . . . .

¶9. Thus, to establish his claim of adverse possession, Marvin had to prove by clear and convincing evidence that his possession of the forty acres "was '(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.'" *Franco*, 342 So. 3d at 1188 (¶29) (quoting *Frazier v. Frazier*, 31 So. 3d 1218, 1220 (¶6) (Miss. Ct. App. 2009)). "Possession is hostile and adverse when the adverse possessor intends to claim title notwithstanding that the claim is made under a mistaken belief that the land is within the calls of the possessor's deed." *Id.* at 81-82 (¶17) (quoting *Wicker v. Harvey*, 937 So. 2d 983, 994 (¶34) (Miss. Ct. App. 2006)). "Importantly, the adverse possessor must hold the property without the permission of the true title owner since permission defeats adverse possession." *Winters v. Billings*, 281 So. 3d 75, 80 (¶13) (Miss. Ct. App. 2019) (citation and internal quotation marks omitted). In addition, "joint use of property is insufficient to establish adverse possession." *Id.* at 82-83 (¶22) (quoting *Riverland Plantation P'ship v. Klingler*, 942 So. 2d 294, 298 (¶14) (Miss. Ct. App. 2006)).

¶10. Here, the chancellor determined that before Lillie's death, Marvin and his sisters had

4

used the forty acres with the implied permission of their mother, the true owner. The chancellor found the testimony showed that multiple family members "grazed [their cows] together at one time or another on all of the King property" and that "[t]he various pastures, including the forty acres that are the subject of this suit, were not exclusive to one member of the family or another." Marvin himself testified that at the time of Lillie's death in April 2012, she still owned cows that she continued to graze on a portion of the forty acres. Linda and her husband Paul also testified that they had grazed their cows on the forty acres both during Lillie's lifetime and after her death. In addition, Paul stated that he had never sought Marvin's permission to graze cows on the forty acres and that to his knowledge, Lillie had likewise never asked anyone's permission to graze her cows on the land.

¶11. Paul and Linda also testified that during Lillie's lifetime, Marvin had never posted any signs, such as "no trespassing" signs, on the subject property, nor did Marvin ever tell them not to graze their cows on the land. Marvin himself provided no testimony that he ever posted "no trespassing" or other similar signs on the forty acres. And while Marvin stated that he had never sought his mother's express permission to use the forty acres, he also did not testify that others sought or were denied his express permission to use the land. Linda and Paul also stated, and the chancellor found as credible, that during her lifetime Lillie had continued to refer to the forty acres as "her property."

¶12. Based on the testimony and evidence presented at the hearing, the chancellor concluded that "the earliest [Marvin] could have begun to adverse[ly] possess the property would have been upon his mother's death" on April 9, 2012, which was "just shy of nine

5

years" from the time Marvin filed his complaint against Linda on March 29, 2021, and just over nine years from when Linda filed her timely counter-claim on April 12, 2021. As a result, the chancellor determined that Marvin could not satisfy "the statutory requirement of adversely possessing [the land] for a period of not less than ten years." The chancellor concluded that in addition to Marvin's failure to adversely possess the land for ten years, Marvin had not sufficiently established any of the other elements required for adverse possession.

¶13. Upon review, we cannot say that the chancellor manifestly erred in applying the elements of adverse possession to Marvin's claim. The record contains sufficient evidentiary support for the chancellor's finding that Marvin failed to prove each element of adverse possession by clear and convincing evidence. We therefore find no clear error in the chancellor's denial of Marvin's claim of title to the subject property by adverse possession.

## CONCLUSION

¶14. Finding no error, we affirm the chancellor's judgment denying Marvin's claim of adverse possession and confirming Linda's title to the forty acres.

¶15. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**

6